**COPAR, INC., Appellant,**

v.

**Sherri ROGERS; Hon. Donna Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2003–SC–0024–WC.

Supreme Court of Kentucky.

Dec. 18, 2003.

Rehearing Denied March 18, 2004.

John C. Morton, Morton & Bach, Henderson, Counsel for Appellant.

Dick Adams, Adams, Ramey & Burns, Madisonville, Counsel for Appellee.

## OPINION OF THE COURT

After being awarded interlocutory temporary total disability (TTD) benefits, the claimant was later found to be permanently and totally disabled. The employer was given credit against the award for any benefits that it had previously paid. Appealing decisions that affirmed, the employer has asserted that the Administrative Law Judge (ALJ) improperly considered opinions that were found in certain hospital records, that the ALJ failed to comply with KRS 342.0011 when determining the extent of disability, and that it was denied meaningful appellate review of the order granting interlocutory TTD. We affirm.

The claimant was born in 1963 and was a high school graduate with one year of training as a licensed practical nurse. She had worked as a restaurant hostess and server and also as a factory worker. At the time of her injury, she was employed as a factory production worker, work that required her to stand for prolonged periods and to lift up to 75 pounds on a regular basis.

The claimant was injured on January 25, 1999, when a door that she was opening was caught by a draft, causing her to jerk and twist her back. She experienced an immediate popping sensation in her low back that was followed by severe pain in her low back and right leg. Her claim alleged that she was in constant pain thereafter and, as a result, that she also developed psychological problems from the pain and from economic pressures due to her inability to work. She testified that she had undergone no psychological treatment before the injury. Although she admitted that she had been involved in a post-injury automobile accident, she maintained that neither it nor personal difficulties contributed to her problems.

The claimant testified that Drs. Taylor and Naimoli continued to treat her for chronic pain and that Drs. Sivley and DeLaRocha continued to provide psychological counseling and to prescribe medication. She stated that her pain and psychiatric medications helped, but sometimes they made her groggy. She testified that she had been awarded Social Security Disability and did not think that she was capable of gainful employment. When questioned about testimony by Ms. Cavanah, she denied riding in a four-wheeler or the back of a pickup truck but indicated that her daughter, who resembles her in size and appearance, may have done so. She testified that Ms. Cavanah had allegedly stolen from her (the claimant's) mother and may have been seeking revenge since it was the claimant's daughter who accused her.

The claimant introduced medical evidence from Dr. Taylor with respect to her physical problems. He testified that although the claimant had sustained previous work-related back injuries in July and December of 1997, her symptoms had almost completely resolved by February 16, 1998. She did not seek further treatment for back complaints until February 2, 1999, after the most recent injury. At that time, he diagnosed L5–S1 nerve root irritation due to the incident at work. As of March 2, 1999, the condition had not responded to conservative treatment, so he took the claimant off work. After two of the employer's experts testified that the claimant had reached maximum medical improvement (MMI), Dr. Taylor was asked to assign an impairment rating. Although he did not think that she had reached MMI,

he estimated an AMA impairment of 15% due to the injury. He explained that he had not assigned work restrictions because he did not think the claimant was capable of working. He stated that an August, 1999, vehicular accident caused only a temporary period of discomfort.

Dr. Awh, a diagnostic radiologist, interpreted a March, 1999, MRI as showing a tiny annular tear and mild disc bulge at L5–S1. He indicated that the tear was not present in a 1997 scan. He explained that the tearing of the annulus is the first step in a disc herniation and that, even where there is no frank herniation, an annular tear can create symptoms and "significant morbidity."

Dr. Naimoli, a neurologist, began treating the claimant in early 2001 and recommended conservative pain management techniques. He released her to return to light duty on March 13, 2001, but indicated that she should remain off work if none was available. On March 23, 2001, Phillip Dunn, the employer's Human Resources Manager, informed the claimant that the restrictions could not be accommodated.

Dr. Gleis, an orthopedic surgeon, examined the claimant for the employer and reviewed the medical records. He diagnosed lumbosacral strains in July and December of 1997, which did not become more symptomatic due to the 1999 injury. Furthermore, he thought that the 1999 MRI was better than the 1997 MRI. He assigned a 5% impairment that he attributed entirely to the 1997 conditions and testified that the claimant reached maximum medical improvement (MMI) on June 7, 1999.

Dr. Goldman, an orthopedic surgeon, performed an independent medical examination and found evidence of symptom magnification and self-limitation. Testifying that there were no objective findings to support the complaints of pain, he assigned a 0% impairment.

Dr. Weiss, a neurosurgeon, performed an independent medical examination and ordered the MRI that was also interpreted by Dr. Awh. In his opinion, the scan was normal. He testified that, at most, the claimant had a musculoligamentous sprain or strain and no permanent impairment.

Dr. Eggers, a neurosurgeon, examined the claimant on referral from Dr. Taylor. He found no indication of a disc hemiation and reported no objective clinical findings. He did not recommend surgery.

At the April 3, 2001, benefit review conference, the claimant was given 30 days to amend her claim to include a psychiatric condition. On April 30, 2001, she served on the employer notice that she was submitting into evidence records from Western State Hospital and Pennyroyal Center, and on May 4, 2001, the motion, notice, and medical records were filed. The motion to amend was granted on May 24, 2001. Although the parties were given 60 days to present proof on the psychiatric claim, they introduced no other proof.

Medical records documented the claimant's emergency admission to Western State Hospital on February 24, 2001, following a medication overdose that was treated as a suicide attempt. The intake history included depressive complaints for the previous two years, back pain, and financial problems. Her diagnosis was major depressive disorder, recurrent, severe, without psychotic features, and with a history of back pain. She later testified that while her daughters were preparing to go to live with their father because she was unable to provide for them, she attempted suicide. She also testified that references to past abuse by an ex-husband, a recent breakup with a boyfriend, and a sexual harassment charge against a coworker were made only in response to

questions from hospital staff for the details of her history.

Among the medical records from Western State Hospital and the Pennyroyal Center were reports from Dr. Sivley, a licensed clinical psychologist who treated the claimant after her hospitalization. He attributed the claimant's emotional problems to the back injury and resulting loss of income. He also noted that the claimant continued to have problems related to her divorce eight years before and problems with her adolescent daughters. Also among the hospital records were notes from Dr. DeLaRocha, the claimant's treating psychiatrist. He diagnosed bipolar disorder for which he prescribed various medications.

Ms. Cavanah's son-in-law worked for the defendant-employer, and she testified on the employer's behalf. She stated that she contacted the employer on several occasions and voiced her suspicions that the claimant "was faking" an injury. Although she testified to several occasions on which the claimant did not appear to her to be seriously injured, she later admitted that she could not recall details of those occasions. With regard to another incident, she admitted that she could not be certain whether it was the claimant or her adolescent daughter whom she had observed.

At the hearing, the ALJ noted that the only evidence with respect to the psychiatric claim was the hospital records that the claimant had introduced. When asked whether that was correct, counsel for the defense responded only that the defense intended to file no evidence on the issue. The hearing order, which was signed by the parties without objection, listed the evidence to be considered. The claimant's evidence consisted of a letter from Phillip Dunn; reports and/or depositions from Drs. Naimoli, Taylor, Trover, and Awh; and the two sets of hospital records. The employer's evidence consisted of depositions from the claimant and Rebecca Cavanah and testimony from Drs. Goldman, Weiss, Gleis, Taylor, and Eggers. The hearing order directed the parties to file briefs on or before October 18, 2001, and indicated that the claim would stand submitted on October 19, 2001.

The employer submitted its brief on October 22, 2001, and failed to request an enlargement of the time for filing it. The brief asserted, among other things, that because the hospital records did not comply with the requirements of a medical report, as set forth in 803 KAR 25:010E, § 9(4), they were not admissible to prove the psychiatric claim.

Relying on Drs. Taylor and Awh, the ALJ concluded that the claimant sustained a work-related physical injury on January 25, 1999; that the incident was the proximate cause of her physical complaints; that the 1997 injuries were only temporary; and also that the subsequent motor vehicle accident produced no permanent change. Relying on the hospital records and the claimant's testimony, the ALJ determined that her psychiatric hospitalization and need for treatment directly resulted from chronic pain due to the injury. Acknowledging evidence of other contributing factors, the ALJ determined that the injury was the primary cause for the depression, suicide attempt, and need for ongoing psychiatric treatment. Despite the "great deal of energy and resources" that the employer had expended in attacking the claimant's credibility, the ALJ concluded that she was an "extremely credible witness," that her physical and psychiatric injuries were debilitating, and that her restrictions would preclude even sedentary employment on a regular basis. The ALJ determined, therefore, that she was totally disabled. In view of her "obvious work ethic" and relative youth, the ALJ award-

ed benefits for rehabilitation in the event that it later became feasible. The award commenced on March 3, 1999, and the employer was given credit against the award for TTD benefits that it had paid under an interlocutory award.

In its petition for reconsideration, the employer asserted that the ALJ erred in relying upon the opinions of Drs. DeLaRocha and Sivley, in determining that the psychiatric condition was a direct result of the physical injury, in finding the claimant to be permanently and totally disabled, in failing to make specific findings concerning the degree of impairment and disability that was attributable to the physical and psychiatric injuries, and in failing to order immediate vocational rehabilitation. The order overruling the petition stated that although Dr. Taylor was most credible with respect to the physical injury, either the 5% or 15% impairment was sufficient to support the total disability award. Furthermore, because the psychiatric condition resulted from the physical injury, it was immaterial that there was no testimony concerning a psychiatric impairment. The ALJ noted that the records of the claimant's psychiatric treatment were filed on May 4, 2001, without objection, and were listed on the September 19, 2001, hearing order, without objection. In view of the employer's failure to object to the evidence until after the hearing, the ALJ concluded that it was properly considered.

Appealing decisions that affirmed the award, the employer maintains: 1.) that the opinions contained in the hospital records were improperly considered; 2.) that the ALJ failed to comply with KRS 342.0011 when determining that the claimant was totally disabled; and 3.) that it was denied meaningful appellate review of the order that granted the claimant interlocutory TTD benefits.

At the time this claim was heard, 803 KAR 25:010E, § 9 (now 803 KAR 25:010, § 10) provided as follows:

(1) A party shall not introduce direct testimony from more than two (2) physicians by medical report except upon a showing of good cause and prior approval by an administrative law judge.

(2) Medical reports shall be submitted on Form 107–I (injury), Form 107–P (psychological), Form 108–OD (occupational disease), Form 108–CWP (coal workers' pneumoconiosis), or Form 108–HL (hearing loss), as appropriate, except that an administrative law judge may permit the introduction of other reports.

(3) Medical reports shall be signed by the physician making the report, or be accompanied by an affidavit from the physician or submitting party or representative verifying the authenticity of the report.

(4) Medical reports shall include, within the body of the report or as an attachment, a statement of qualifications of the person making the report. If the qualifications of the physician who prepared the written medical report have been filed with the commissioner and the physician has been assigned a medical qualifications index number, reference may be made to the physicians index number in lieu of attaching qualifications.

(5) Narratives in medical reports shall be typewritten. Other portions, including spirometric tracings, shall be clearly legible.

(6) Upon notice, a party may file the testimony of two (2) physicians, either by deposition or medical report, which shall be admitted into evidence without further order if an objection is not filed. Objection to the filing of a medical report shall be filed within ten (10) days of the filing of the notice or the motion for

admission. Grounds for the objection shall be stated with particularity. The administrative law judge shall rule on the objection within fifteen (15) days of filing.

(7) If a medical report is admitted as direct testimony, any adverse party may depose the reporting physician in a timely manner as if on cross-examination at its own expense.

803 KAR 25:010E, § 12 (now 803 KAR 25:010, § 14) provided as follows:

(1) The Rules of Evidence prescribed by the Kentucky Supreme Court shall apply in all proceedings before an administrative law judge except as varied by specific statute and this administrative regulation.

(2) Any party may file as evidence before the administrative law judge pertinent material and relevant portions of hospital, educational, Office of Vital Statistics, Armed Forces, Social Security, and other public records. An opinion of a physician which is expressed in these records shall not be considered by an administrative law judge in violation of the limitation on the number of physician's opinions established in KRS 342.033.

KRE 103 provides that an allegation of error may not be based on a ruling that admits evidence unless a substantial right of the party is affected and unless the party makes a timely objection or motion to strike. It was not until after the claim was taken under submission, in its tardy brief to the ALJ, that the employer first objected to the use of opinions contained in the claimant's hospital records to prove the existence and cause of her psychiatric condition. The employer maintains, however, that the regulation concerning medical reports is more specific than the regulation concerning the Rules of Evidence and, therefore, that hospital records must meet the requirements of the medical report regulation in order for the opinions they contain to be considered as evidence. It requires that medical reports must be signed or authenticated and accompanied by a statement of the qualifications of the individual making the report. Seeking to excuse its failure to object earlier, the employer maintains that if the claimant intended to rely on opinions from the hospital records to prove a psychiatric injury, it was her burden to give notice of their intended use.

Contrary to the employer's assertion, we are persuaded that nothing in 803 KAR 25:010E, § 9 or 12 abrogates KRE 103. The time for taking proof with respect to this claim closed well before the hearing was held. At the hearing, the ALJ specifically noted that the hospital records were the only evidence concerning the psychiatric condition. It was apparent, therefore, that the claimant intended to rely upon them to prove the condition's existence and cause. Yet, when questioned by the ALJ, the employer failed to object to such use of any medical opinions they contained and indicated only that it intended to introduce no psychiatric evidence. Furthermore, the employer signed, without objection, the hearing order that listed the hospital records as evidence for the claimant.

803 KAR 25:010E, § 12(2) is a specific regulation that addresses the admission of hospital records into evidence. It clearly anticipates that medical opinions contained in such records will sometimes be considered by an ALJ. Although the regulation specifies that opinions contained in such records shall not be considered in violation of KRS 342.033, it does not require that they be signed by the author or that the qualifications of the author be attached. Therefore, it is open to debate

whether 803 KAR 25:010E, § 9 applies to opinions that are found in hospital records. In any event, we are persuaded that the employer's failure to raise a timely objection to such use of the claimant's hospital records was fatal to its present assertion of error.

Although the employer also asserts that the ALJ erred by violating the limitation on the number of testifying physicians that is found in KRS 342.033, that argument was never raised to the ALJ. Furthermore, the benefit review conference memorandum gave the claimant 30 days to move to amend her claim to add the psychiatric condition, and the motion to amend was later granted. Thus, a clear implication was that the ALJ chose to exercise the authority under KRS 342.033 to permit the parties to introduce additional medical opinions with respect to the psychiatric claim. In fact, they had already done so with respect to the physical injury claim.

■ The employer asserts that the finding of total disability in this case was invalid because the ALJ failed to select a particular impairment rating and also because the impairments that were in evidence were invalid. In October, 1999, after the employer's experts determined that the claimant reached MMI, Dr. Taylor was asked to assign an impairment rating and indicated that it was 15%. When deposed on November 21, 2000, he indicated that the present impairment rating also was 15% and that it might take as long as ten years for the claimant to reach MMI. Dr. Gleis examined the claimant in January, 2001. He was convinced that she had reached MMI as of June, 1999, and assigned a 5% impairment due to a non-work-related incident.

Before the Board, the employer maintained that because Dr. Taylor's rating was assigned before he thought the claimant had reached MMI and because Dr.

Gleis attributed his rating to a 1997 incident, neither was valid with respect to the 1999 injury. We note, however, that an ALJ may pick and choose among conflicting medical opinions and has the sole authority to determine whom to believe. *Pruitt v. Bugg Brothers*, Ky., 547 S.W.2d 123 (1977). Thus, the ALJ was free to rely upon Dr. Gleis in order to conclude that the claimant reached MMI before November, 2000, but to rely on Dr. Taylor with respect to the cause and extent of her impairment. Likewise, the ALJ was free to rely upon Dr. Taylor with respect to causation but Dr. Gleis with respect to the extent of permanent impairment at MMI. In either event, there was sufficient evidence in the record to support a finding of total disability.

■ KRS 342.0011(11)(b) and (c) require a permanent disability rating for a finding of permanent partial or permanent total disability. KRS 342.0011(36) defines the term "permanent disability rating" as "the permanent impairment rating selected by an [ALJ] times the factor set forth in the table that appears at KRS 342.730(1)(b)." We note, however, that KRS 342.730(1)(b) is the statute for calculating a permanent partial disability benefit. Neither KRS 342.730(1)(b) nor the table contained therein has any bearing on the calculation of a permanent total disability benefit under KRS 342.730(1)(a). Unlike a finding of permanent partial disability, a finding of permanent total disability is based upon a number of factors, only one of which is the existence of an impairment. KRS 342.0011(11)(c) and (36); *Ira A. Watson Department Store v. Hamilton*, Ky., 34 S.W.3d 48 (2000). Thus, we have stated that an award of income benefits for permanent total disability requires the worker to have sustained a work-related harmful change that warrants an AMA impairment and results in a permanent and complete inability to

work. *See Hill v. Sextet Mining Corp.,* Ky., 65 S.W.3d 503, 508 (2001). We conclude, therefore, that the findings that were made were sufficient to support the conclusion that the claimant was totally disabled.

■ The employer's final argument is that it was denied meaningful appellate review of the ALJ's interlocutory award of TTD benefits. It asserts that the claimant failed to show that she would suffer irreparable harm pending a final decision on her claim as required by 803 KAR 25:010E, § 10 and that it had no recourse. We note, however, that the period during which interlocutory TTD benefits were ordered fell within the period of the permanent total disability. In view of the fact that the employer was given credit for any compensation that it had paid, we conclude that its question concerning the propriety of the interlocutory award is moot.

The decision of the Court of Appeals is affirmed.

All concur.