**DINGO COAL COMPANY, INC., Appellant,**

v.

**McQuade TOLLIVER; Workers' Compensation Funds, Successor to Special Fund; Hon. Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2003–SC–0178–WC.

Supreme Court of Kentucky.

March 18, 2004.

W. Barry Lewis, Francesca L. Maggard, Lewis and Lewis Law Offices, Hazard, Counsel for Appellant.

Edmond Collett, Monica J. Rice–Smith, Collett & Buckle, PSC, Hyden, Counsel for Appellee, McQuade Tolliver.

Joel D. Zakem, Kentucky Labor Cabinet, Frankfort, Counsel for Appellee, Workers' Compensation Funds.

## OPINION OF THE COURT

The claimant injured his back in 1979 and received benefits for a 15% occupational disability. He moved to reopen the award in 2000 and was later awarded a total disability. Appealing decisions that affirmed the award, the employer asserts that the Administrative Law Judge (ALJ) erred by failing to determine that the December 12, 1996, amendment to KRS 342.125(1)(d) is remedial and by increasing the claimant's award absent objective medical evidence of a worsening of functional impairment. Although we agree that the disputed amendment is remedial, it does not govern the criteria for awarding additional benefits with respect to a reopened claim. *Garrett Mining Co. v. Nye*, Ky., 122 S.W.3d 513 (2003); *Woodland Hills Mining, Inc. v. McCoy*, Ky., 105 S.W.3d 446 (2003). We conclude, therefore, that the Court of Appeals was correct in affirming the award but that its reasoning was incorrect.

In the initial claim, the parties introduced conflicting evidence from eleven physicians, two of whom were psychiatrists. Some thought that the claimant should quit working altogether due to disk abnormalities at L4–5 and L5–S1. Others thought that his back problems were minor. The claimant testified that he thought he could not return to work and that virtually any position was uncomfortable. He had sought Social Security Disability benefits without success. The "old" Workers' Compensation Board relied upon Dr. Goodman who assigned a 10% "permanent partial disability to the body as a whole" and apportioned it equally to the injury and pre-existing conditions. In his opinion, the claimant should not lift more than 50 pounds but was capable of light work. Furthermore, if he did so, he would gradually improve.

The claimant's motion to reopen alleged that his physical condition had deteriorated and that his occupational disability had increased. It was supported with a report from Dr. Muckenhausen indicating that his physical problems due to the injury had worsened since the initial decision. The motion was granted, after which the parties proceeded to take additional proof.

At reopening, the claimant testified that he had neither worked nor sought work since 1979. He asserted, however, that his back and leg pain were more severe than at the time of the initial award. Although he had not undergone back surgery, he required more medication, including Oxycontin, Lortab, steroid injections, and various other medications. He stated that he used a cane for walking. His activities were more restricted because his pain increased with activity, and his leg would give way. He had more difficulty sleeping, sitting, bending, lifting, carrying, kneeling, crouching, and crawling, and he had lost 50 pounds in the past three years. He thought that he could not return to any of his previous work and knew of no work that he could perform.

Dr. Muckenhausen examined the claimant and reviewed his medical records in October, 2000, at which time he complained of low back pain that radiated into his hips and legs. A physical examination revealed tenderness in the lower thoracic and lumbar spine with muscle spasms and trigger points paraspinally, sciatic groove tenderness, and a reduced range of motion. Diagnostic studies revealed degenerative changes throughout the lumbar spine. She diagnosed progressive degenerative disc disease with a lumbosacral radicular involvement, anxiety, and depression, and she attributed the claimant's present condition to his work-related injury. She assigned an 18–20% AMA impairment and restricted the claimant to lifting no more than 10 pounds, to frequently lifting or carrying less than 10 pounds, to limited standing, walking, sitting, and pushing or pulling. Furthermore, she thought that his condition had progressed, as evidenced by his increased complaints and the positive findings on examination.

When Dr. Patrick examined the claimant in April, 2001, he complained of back and hip pain and of his left leg giving out. Dr. Patrick observed an unsteady gait and reduced range of motion in the back. Diagnostic studies revealed mild bulging at L4–5 and L5–S1 with degenerative changes but no nerve impingement or herniated disk. He assigned a 5% AMA impairment and thought it unnecessary to assign restrictions because the claimant would self-restrict.

In May, 2001, Dr. Goldman reviewed medical records, examined the claimant, and received complaints of low back pain that radiated into the legs. He noted degenerative changes throughout the lumbar spine with minimal diffuse bulges and significant facet hypertrophy. Physical examination revealed reduced range of motion in the lumbar spine and tenderness in the SI joint and mid-line paraspinous muscles bilaterally. The claimant's entire body appeared to be tremulous. He had a severely restricted range of motion in the hip bilaterally and decreased sensation throughout both legs. Noting the claimant's less than maximal effort on the functional capacity evaluation, Dr. Goldman concluded that he magnified his symptoms. He assigned a 5% impairment, indicating that there was no increased impairment or occupational disability. He could not state whether the complaints of increased pain were credible but was of the opinion that any increase was secondary to the natural progression of the degenerative changes.

In June, 2001, Dr. Ensalada reviewed the claimant's medical records dating back to 1980. He found no change in disability as shown by objective medical evidence of a worsening of impairment since 1981, although he acknowledged that the claimant began complaining of increased pain in 1995. Dr. Ensalada noted that the claimant's general health was poor and that he suffered from non-work related conditions as well as his back problems. He concluded that the diagnostic studies showed only degenerative changes that were related to the natural aging process and that the same restrictions would apply as at the time of the initial award. In his opinion, the 1979 back injury did not require the treatment that had been given.

Rejecting the employer's assertion that KRS 342.125(1)(d) applied to the merits of the reopening, the ALJ determined that it was substantive rather than procedural. KRS 342.0015. Noting the conflicting medical opinions, the ALJ concluded that there was sufficient evidence that the claimant's back injury was more disabling than it had been at the time of the initial award. Furthermore, after considering his age, education, work experience, the credibility of his testimony, and the re-

strictions imposed by Dr. Muckenhausen, the ALJ determined that he was totally disabled under the standard of *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968). Although the award has been affirmed on appeal, the employer continues to assert that the decision was erroneous.

Reopening is the remedy for addressing certain changes that occur or situations that come to light after benefits are awarded. Under KRS 342.125, a motion to reopen is the procedural device for invoking the jurisdiction of the Department of Workers' Claims to reopen a final award. In order to prevail, the movant must offer prima facie evidence of one of the grounds for reopening that are listed in KRS 342.125(1). *Stambaugh v. Cedar Creek Mining Co.,* Ky., 488 S.W.2d 681 (1972). Only after the motion has been granted will the opponent be put to the expense of litigating the merits of an assertion that the claimant is entitled to additional income benefits under KRS 342.730. *Id.*

The grounds for granting a motion to reopen and the standards for awarding increased benefits when the merits of the reopening are considered are not necessarily consistent. In *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33 (1991), the 1987 amendment to KRS 342.125(1) aligned what, at the time of Mr. Gossett's injury, had been inconsistent standards for reopening and awarding income benefits. Relying on the principle that statutes relating to remedies or modes of procedure do not normally come within the legal conception of a retrospective law, the Court determined that the amendment was remedial. Thus, it governed motions to reopen that were filed on or after its effec-

tive date and was the standard by which Gossett's motion to reopen his 1981 award should have been decided. Since Gossett had offered prima facie evidence of increased occupational disability, as required by the amended standard, we remanded the claim for the taking of further proof and a decision on the merits.[1]

Effective December 12, 1996, the legislature amended KRS 342.125(1) by enacting KRS 342.125(1)(a)—(d). KRS 342.125(1)(d) permits the reopening of a final award upon evidence of a "[c]hange of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order." This requirement differs from the previous standard for granting a motion to reopen where increased income benefits are sought under KRS 342.730. It also differs from the standard for awarding such benefits in a pre-December 12, 1996, claim. As we attempted to explain in our recent decision in *Woodland Hills Mining, Inc. v. McCoy, supra,* the amendment does not govern the type of evidence necessary to establish the right to greater benefits under KRS 342.730 with respect to a reopened claim. It changes only a procedural requirement, i.e., one of the grounds upon which a motion to reopen may be granted. In other words, KRS 342.125(1)(d) addresses the necessary prima facie showing in order to prevail on a motion to reopen that is filed on or after December 12, 1996. See KRS 342.0015. It has no effect on the substantive proof requirements for a claim that arose before its effective date. *Id.* The merits of a worker's right to receive additional income benefits at reopening are governed by the

---

1. See also *Campbell v. Universal Mines,* Ky., 963 S.W.2d 623 (1998) and *AAA Mine Services v. Wooten,* Ky., 959 S.W.2d 440 (1998), which involved standards for reopening under KRS 342.125(2) [now KRS 342.125(5)] that differed from the applicable standards for proving an entitlement to increased benefits when the merits were considered.

version of KRS 342.730 that was effective on the date of injury. See KRS 342.125(6); *Garrett Mining Co. v. Nye, supra; Woodland Hills Mining, Inc. v. McCoy, supra; Maggard v. International Harvester Co.,* Ky., 508 S.W.2d 777 (1974). Thus, reliance on *Peabody Coal Co. v. Gossett, supra,* is misplaced where an appeal concerns the decision on the merits of a reopening for additional benefits under KRS 342.730.

The claimant's injury and award both occurred before December 12, 1996. His subsequent motion to reopen was granted, and the merits of his assertion that he was entitled to additional benefits were decided in his favor under the *Osborne v. Johnson, supra,* standard. As we have explained, that was the appropriate standard for considering the merits of a motion to reopen a pre-December 12, 1996, award. There-

fore, the question before the Court is whether the increased award was supported by substantial evidence. *Special Fund v. Francis,* Ky., 708 S.W.2d 641, 643 (1986). Having reviewed the evidence and considered the arguments of the parties, we have concluded that the decision was not unreasonable and was properly affirmed on appeal.

The decision of the Court of Appeals is affirmed.

All concur.