Sue E. COLWELL, Appellant,

v.

DRESSER INSTRUMENT DIVISION; Hon. Marcel Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2006–SC–0048–WC.

Supreme Court of Kentucky.

Nov. 22, 2006.

Rehearing Denied April 19, 2007.

Susan Dabney Luxon, Luxon, Patterson & Wickersham, PLLC, Richmond, Counsel for Sue E. Colwell.

W. Barry Lewis, Lewis & Lewis Law Offices, Hazard, Counsel for Dresser Instrument Division.

## OPINION OF THE COURT

KRS 342.125(1)(d) permits a final workers' compensation award to be reopened and amended based upon evidence of a "change of disability as shown by objective medical evidence of worsening or improvement of impairment...."

The claimant sought to reopen her settled claim, alleging that her injury had become permanently and totally disabling. An Administrative Law Judge (ALJ) relied upon a physician who testified that the 12% impairment rating to which the parties agreed was appropriate, that it had not changed, and that the only change at reopening was in the claimant's subjective complaints of pain. On that basis, the ALJ determined that the claimant failed to meet her burden of proof under KRS 342.125(1)(d) and later determined that she failed to show a change of disability.

Relying on *Dingo Coal Co., Inc. v. Tolliver*, 129 S.W.3d 367 (Ky.2004), and an unpublished decision of this court, a majority of the Board determined that a greater permanent impairment rating is not pre-requisite to an award of additional benefits when a worker who was partially disabled at the time of the initial award is totally disabled at reopening. The majority vacated the ALJ's decision and remanded with directions to determine the claimant's actual disability from her injury based upon her permanent impairment rating at settlement and then to determine whether her disability was permanent and total at reopening under KRS 342.0011(11)(c) and *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky.2000).

Convinced that the Board misconstrued *Dingo Coal Co., Inc. v. Tolliver, supra*, the Court of Appeals reversed. The court reasoned that increased impairment is the only statutory basis for finding increased disability. Therefore, the ALJ's finding on the issue of impairment was a sufficient basis to dismiss the reopening.

Chapter 342 underwent extensive revisions in 1996. Among them were a new definition of the term "injury," new standards for awarding disability, and new standards for reopening. This appeal concerns the standard by which a worker must prove an entitlement to permanent total disability benefits at the reopening of a post-December 12, 1996, claim and whether the ALJ applied the correct standard when concluding that the claimant failed to meet her burden of showing greater disability.

Because KRS 342.125(1)(d) requires only a "worsening of impairment," we have determined that the claimant was not required to prove a greater permanent impairment rating in order to receive permanent total disability benefits at reopening. Her burden was to prove by objective medical evidence that she sustained a worsening of impairment from the injury; to prove that the change was permanent; and to prove that it caused her to be totally and permanently disabled under

the standard described in KRS 342.0011(11)(c) and *Ira A. Watson Department Store v. Hamilton, supra.* Therefore, we affirm insofar as a worsening of impairment is the only statutory basis for proving greater disability in a post-December 12, 1996, claim. But because it is not entirely clear that the ALJ applied the correct standard when determining whether the claimant experienced a worsening of impairment, the claim must be remanded for further consideration. To that extent, we reverse.

The ALJ's summary of the evidence indicates that the claimant sustained a low back injury in 1999 while lifting boxes in the course of her work. Dr. Tibbs diagnosed a herniated disc at L5–S1 that caused left-sided radiculopathy and performed surgery in August, 1999. Records from the Samaritan Hospital Pain Care Center indicated that the claimant received treatment for myofascial pain and probable piriformis syndrome on four occasions between August 7 and September 6, 2000. In July, 2001, she returned to work.

Dr. Owen performed an independent medical examination on August 28, 2001. He diagnosed status post lumbar diskectomy with chronic low back pain syndrome and assigned a 10% impairment under DRE category III. He also imposed work restrictions and thought that the claimant lacked the physical capacity to return to her former work due to her need for ongoing pain and psychotropic medication and the severity of her low back discomfort with activity.

The parties settled the claim in December, 2001, for a partial disability that was based upon a 12% impairment. At the time, Dr. Tibbs assigned a 12% impairment under DRE category III of the Fifth edition of the AMA *Guides to the Evaluation of Permanent Impairment (Guides).*

The claimant testified that she quit working in March, 2003, due to increased pain in her back and left leg. On April 23, 2003, she returned to the Samaritan Hospital Pain Care Center for treatment. She was diagnosed with a mixed pain syndrome under maximum medical therapy; facet arthropathy; and limb pain for which she received lumbar facet injections in May and June, 2003. Notes from June 17, 2003, indicated that her symptoms had been confirmed by a March, 2003, EMG study. Notes from November 7, 2003, indicated that the claimant had an established radiculopathy that was clearly related to the work injury and that Dr. Witt's treatment plan included the use of a spinal cord stimulator. As of March 9, 2004, Dr. Witt noted that the device had not been authorized and that the claimant had not reached maximum medical improvement (MMI). He thought there was still considerable room for improvement.

Dr. Menke performed three independent medical examinations. On April 29, 2003, he diagnosed post laminectomy syndrome with residual low back and left radicular complaints and was of the opinion that her symptoms prevented the claimant from performing even sedentary work. Noting that the work injury caused a left-sided L5–S1 disc herniation, he attributed her present symptoms to the injury and recommended therapeutic injections. On September 17, 2003, he noted that treatment thus far had been reasonable but that he recommended no further injections. On December 5, 2003, he noted again that the claimant was unable to work and that she had reached MMI.

On February 26, 2004, the claimant moved to reopen, alleging that her medical condition had worsened and caused her to become totally disabled. She was found to have made a sufficient *prima facie* showing for reopening under KRS

342.125(1)(d), and the parties submitted evidence on the merits.

In addition to the evidence summarized previously, the employer submitted a report from Dr. Goldman, who performed an independent evaluation on April 7, 2004, and reviewed the claimant's medical records from April 24, 2003, through at least October 14, 2003. In his opinion, she had complaints without objective findings. He noted that she voluntarily limited the range of motion in her lumbar spine; that she had a normal motor and reflex examination of the lower extremities; that the sensory examination was inconclusive; that there was no evidence of muscle spasm; and that there was no evidence of atrophy in either lower extremity. He stated that the only real change in her complaints was that her pain had increased; however, pain was subjective and the presence of four positive Waddell signs indicated that she magnified her symptoms. Dr. Goldman noted that lumbar surgery warranted a DRE category III 10–13% impairment; that the claimant was given a 12% impairment rating initially; that it was probably appropriate; and that there was no change in impairment as shown by objective medical evidence since the settlement. He knew of no reason why the claimant could not perform the work she had described.

Dr. Crystal performed a vocational evaluation in June, 2004. In his opinion, the claimant would be a good candidate for short-term or on-the-job training. Based on the assessments of Drs. Menke and Goldman, the claimant's ability to work had not changed since the settlement.

When the claim was ready for a decision, the contested issues included the requirements for reopening under KRS 342.125 and extent and duration of disability. After summarizing the evidence, the ALJ analyzed the issues as follows:

KRS 342.125(1)(d) requires plaintiff to show change of disability by objective medical evidence of worsening of impairment due to a condition caused by the injury since the date of the award. Having considered the entirety of the evidence, not only as summarized her but as contained in the record, I am persuaded by the opinion of Dr. Goldman. He gave an impairment range of 10 to 13% and said 12% was appropriate. He said that the only change was plaintiff's pain, which is subjective. I find, therefore, that plaintiff has not met her burden of proof under KRS 342.125(1)(d). Her motion to reopen must be OVERRULED. The remaining issue is moot.

In a petition for reconsideration, the claimant asserted that the ALJ erred in concluding that she failed to meet her burden under KRS 342.125(1)(d). She asserted that she was totally disabled and, therefore, was not required to show a greater AMA impairment rating at reopening but a greater disability. The petition was denied. Noting that Dr. Goldman was found to be most persuasive, the ALJ stated that substantial evidence supported the finding that the claimant had not suffered a change in disability so as to be entitled to additional benefits.

Although KRS 342.305 provides that a final workers' compensation award is enforceable in circuit court as a judgment, KRS 342.125 permits some relief from the principles of the finality of judgments under specified conditions. To prevent parties from being put to the expense of defending unwarranted motions to reopen, the court determined in *Stambaugh v. Cedar Creek Mining Co.*, 488 S.W.2d 681, 682 (Ky.1972), that reopening should be a two-step process in which the movant is required to make a *prima facie* showing indicating a substantial possibility that a

condition warranting a change in the award exists.

From its inception until 1987, KRS 342.125 permitted an award to be reopened and amended based upon evidence of a "change of conditions." As interpreted by the courts in *Continental Air Filter Co. v. Blair*, 681 S.W.2d 427 (Ky.1984); *Mitsch v. Stauffer Chemical Co.*, 487 S.W.2d 938 (Ky.1972); and *Gro–Green Chemical Co. v. Allen*, 746 S.W.2d 69 (Ky. App.1987), "change of conditions" referred to a change of medical condition that caused a change of occupational disability. In 1987, the General Assembly amended "change of conditions" to read "change of occupational disability," which did not require a change in the worker's medical condition. *See Peabody Coal Co. v. Gossett*, 819 S.W.2d 33 (Ky.1991). However, the 1994 amendments returned the standard to a change of "medical condition."

■ As amended effective December 12, 1996, KRS 342.125(1)(d) permits an award to be reopened upon evidence of a post-award "change of disability as shown by objective medical evidence of worsening or improvement of impairment . . . ." A finding of permanent partial or permanent total disability under KRS 342.0011(11)(b) or (c) must be supported by evidence of a permanent disability rating, which requires a permanent impairment rating as determined under the latest available edition of the *Guides*. KRS 342.0011(36) and KRS 342.730(1)(b) base a worker's permanent disability rating on the individual's AMA impairment rating and a statutory factor. However, KRS 342.0011(11)(c) and KRS 342.730(1)(a) base a finding of permanent total disability on different criteria. A totally disabling injury must result in a permanent impairment rating and a complete and permanent inability to work. *See Copar, Inc. v. Rogers*, 127 S.W.3d 554,

561–62 (Ky.2003); *Ira A. Watson Department Store v. Hamilton, supra.*

■ Chapter 1 of the 5th Edition explains that the purpose of the *Guides* is to establish a standardized, objective approach to evaluating medical impairments. It defines impairment as being "a loss, loss of use, or derangement of any body part, organ system, or organ function." *Id.* at 2. Impairment is considered to be permanent "when it has reached maximum medical improvement (MMI), meaning it is well stabilized and unlikely to change substantially in the next year with or without medical treatment." *Id.* Impairment may be manifested objectively or subjectively, and "[a]lthough the *Guides* emphasizes objective assessment, subjective symptoms are included within the diagnostic criteria." *Id.* Whole person impairment ratings established in the *Guides* "estimate the impact of the impairment on the individual's overall ability to perform activities of daily living, *excluding work.*" (emphasis original). *Id.* at 4. Confronted with that statement in *Adkins v. R & S Body Co.*, 58 S.W.3d 428 (Ky.2001), the court noted that although the purpose of an income benefit is to compensate an injured worker for a loss of earning capacity (occupational disability) and although the 1996 Act bases a worker's disability from an injury on the resulting AMA impairment rating, the rating is but one consideration in determining the amount of the worker's benefit. Therefore, although the formula found in KRS 342.730(1)(b) and (c) may imperfectly measure an individual worker's loss, it is not arbitrary and unconstitutional.

*Ira A. Watson Department Store v. Hamilton, supra,* and *McNutt Construction/First General Services v. Scott,* 40 S.W.3d 854 (Ky.2001), explain that a permanent impairment rating is prerequisite to a finding of permanent total disability under KRS 342.0011(11)(c) but that other

factors also are relevant. Among them are a worker's post-injury physical, emotional, intellectual, and vocational status; how those factors interact; and the likelihood that the worker will be able to find work consistently under normal employment conditions.

KRS 342.125(1)(d) requires a change of disability to be shown by "objective medical evidence of a worsening ... of impairment." The statute does not refer to the *Guides*, to permanent impairment rating, or to permanent disability rating. We conclude, therefore, that although a greater permanent impairment rating is objective medical evidence of a worsening of impairment, it is not the only evidence by which the statute permits a worsening of impairment to be shown. Chapter 342 does not define the term "objective medical evidence;" however, KRS 342.0011(33) does define "objective medical findings" as being "information gained through direct observation and testing of the patient applying objective or standardized methods." *See Staples, Inc. v. Konvelski*, 56 S.W.3d 412 (Ky.2001); *Gibbs v. Premier Scale Company/Indiana Scale Company*, 50 S.W.3d 754 (Ky.2001). Mindful that KRS 342.0011(1) requires a harmful change in the human organism to be evidenced by objective medical findings in order to be compensable, we are convinced that KRS 342.125(1)(d) and KRS 342.730(1) require no less at reopening. If such findings demonstrate that an injured worker suffers a greater loss, loss of use, or derangement of a body part, organ system, or organ function due to a condition caused by the injury, they demonstrate a worsening of impairment. A worsening of impairment may or may not warrant increasing the worker's permanent impairment rating under the *Guides.*

Whether a worsening of impairment rises to the level of greater compensability is

determined under KRS 342.730(1) and KRS 342.0011(11). KRS 342.730(1)(b) and KRS 342.0011(11)(b) require a worker who remains partially disabled to show a greater permanent impairment rating in order to obtain a greater award. But KRS 342.730(1)(a) and KRS 342.0011(11)(c) require a worker who was partially disabled at the time of the initial award and totally disabled at reopening to show only that a worsening of impairment due to the injury is permanent and causes the worker to be totally disabled.

*Garrett Mining Co. v. Nye*, 122 S.W.3d 513, 519 (Ky.2003); *Dingo Coal Co., Inc. v. Tolliver, supra*, and other published decisions of this court have addressed the effect of the 1996 amendment to KRS 342.125(1)(d) on the reopening of a pre-December 12, 1996, claim. Because they involved incongruent versions of KRS 342.125(1), KRS 342.0011, and KRS 342.730, they are of limited applicability to a post-December 12, 1996, claim in which such an incongruity does not exist.

The claimant was injured after December 12, 1996, and settled her initial claim. Her motion to reopen asserted that her medical condition had worsened and that she was totally disabled. The Chief ALJ determined under *Stambaugh v. Cedar Creek Mining Co., supra*, that she made an adequate *prima facie* showing under KRS 342.125(1)(d) and assigned the claim for further adjudication. There is no argument that the decision was an abuse of discretion.

■ Because KRS 342.125(7) precluded any statement in the settlement from binding the parties on the merits at reopening, the claimant was entitled to receive the difference between the actual disability the injury caused at settlement and the disability that it caused at reopening. *See Newberg v. Davis*, 841 S.W.2d 164 (Ky. 1992). She was working when she settled

the initial claim; therefore, KRS 342.0011(11)(c) precluded a finding that her actual disability at the time was total. Her actual disability was based on the permanent impairment rating that the injury caused and the corresponding factor found in KRS 342.730(1)(b). KRS 342.125(1)(d) permitted her award to be reopened and amended based upon evidence of a change of disability as shown by objective medical evidence of increased impairment due to a condition caused by the injury, and KRS 342.730(1)(a) permitted only disability from work-related impairment to be considered when determining whether she was totally disabled. Therefore, the claimant's burden on the merits at reopening was to prove by objective medical evidence that she sustained a post-settlement worsening of impairment from the injury; to prove that the change was permanent; and to prove that it caused her to be totally and permanently disabled under the standard described in *Ira A. Watson Department Store v. Hamilton, supra.*

The ALJ who considered the merits of the claim for additional benefits chose to rely on Dr. Goldman. He testified that the claimant's permanent impairment rating was probably 12% at settlement and that it had not changed. He also enumerated several physical findings that led him to conclude that the only change was in the claimant's subjective complaints of pain. Emphasizing the subjective nature of the complaints, he noted the evidence of symptom magnification. It is clear from the ALJ's reliance on Dr. Goldman that the ALJ was convinced the claimant's permanent impairment rating at settlement was 12% and had not changed. Although the ALJ noted Dr. Goldman's testimony that "the only change was [the claimant's] pain, which is subjective," it is not entirely clear that the ALJ considered whether objective medical evidence showed that the injury caused greater impairment. Therefore, although the evidence did not compel a finding of greater impairment and although there was substantial evidence to support a finding that there was none, a remand for further consideration is required.

The decision of the Court of Appeals is affirmed in part and reversed in part, and the claim is remanded to the ALJ for further consideration.

LAMBERT, CJ., and GRAVES, MINTON, ROACH, SCOTT and WINTERSHEIMER, JJ., concur.

McANULTY, J., not sitting.