RENDERED:  APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth Of Kentucky

# Court of Appeals

NO. 2024-CA-1365-WC

NESCO RESOURCE, LLC                                          APPELLANT


PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-15-64272


TRAVIS ADAMS; HONORABLE JONATHAN
WEATHERBY, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE:  Nesco Resource, LLC petitions for review of an opinion of the

Workers' Compensation Board ("the Board") affirming the opinion and order and

amended opinion and order of the Administrative Law Judge ("the ALJ").   In

reopening proceedings, the ALJ found that Travis Adams sustained a post-award

worsening of an injury he suffered while employed by Nesco and is now permanently totally disabled.  Nesco argues that the ALJ improperly relied on a medical report that did not conform to the 5th Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* ("AMA *Guides*") and failed to compare the objective medical evidence at the time of the original award with the evidence at the time of reopening.  Upon careful review, we affirm the opinion of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

Adams was hired by Nesco, a temporary employment agency, in 2015.  He was assigned to work at Aichi Forge, a crankshaft manufacturer.  On October 9, 2015, he suffered a serious injury when the press machine he was operating hit some metal tongs.  The tongs shot out directly into Adams's abdomen, injuring his small bowel and mesentery.  Adams thereafter underwent six abdominal surgeries including a small bowel resection; surgery for adhesiolysis; treatment when the surgical incision ripped open; and ventral hernia repair.  As a result of the injury, Adams suffers from ongoing fecal urgency and incontinence.  The injury and subsequent treatments also exacerbated Adams's pre-existing depression and anxiety.  In October 2020, he was admitted to an inpatient facility for several days for suicidal ideation.

Adams returned to work at Nesco after the injury, performing a less physically demanding job. He then left Nesco and moved to Kelly Services, which assigned him to work at Toyota. In 2017, Adams injured his right elbow while employed at Toyota but the workers' compensation claim relating to that injury was dismissed and is not at issue in the present appeal. Adams has not worked since the elbow injury. He receives Social Security disability benefits.

On March 25, 2019, the ALJ awarded permanent partial disability benefits to Adams stemming from the abdominal injury. The ALJ found that Adams sustained a 9% permanent partial impairment as a result of the injury and a 3% work-related permanent psychological impairment (based on a total psychological impairment of 5% minus a 2% pre-existing impairment) for a combined whole person impairment of 12%. The ALJ also determined Adams lacked the capacity to return to the same or similar work he had been performing at Nesco.

On March 9, 2023, Adams filed a motion to reopen, alleging that his condition had worsened since the original award. The ALJ issued an opinion and order finding his impairment had increased with the result that he is permanently totally disabled. Nesco filed a petition for reconsideration which was sustained in part and overruled in part. The ALJ issued an amended opinion and award on April 23, 2024, removing references to a bladder issue and dismissing the claim

relating to the elbow injury. Nesco filed an appeal to the Workers' Compensation Board, which entered an opinion affirming the ALJ's amended opinion and order. This petition for review by Nesco followed.

## STANDARD OF REVIEW

"An injured worker bears the burden of proof and risk of non-persuasion with respect to proving a post-award increase in disability." *James T. English Trucking v. Beeler*, 375 S.W.3d 67, 69 (Ky. 2012) (footnotes and citations omitted). Our standard of review is highly deferential to the ALJ as the fact finder:

> [Kentucky Revised Statutes] KRS 342.285 designates the ALJ as the finder of fact. It permits an appeal to the Board but provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and, together with KRS 342.290, prohibits the Board or a reviewing court from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact."
>
> KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. A finding that favors the party with the burden of proof must be affirmed if

-4-

substantial evidence supports the finding, *i.e.*, if the finding was reasonable under the evidence.

*Id*. at 69-70 (footnotes and citations omitted).

When the Court of Appeals reviews a decision of the Board, "we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

## ANALYSIS

"Reopening is the remedy for addressing certain changes that occur or situations that come to light after benefits are awarded." *Lakshmi Narayan Hosp. Group Louisville v. Jimenez*, 653 S.W.3d 580, 585 (Ky. 2022) (quoting *Dingo Coal Co. v. Tolliver*, 129 S.W.3d 367, 370 (Ky. 2004)). KRS 342.125 provides in pertinent part that "[u]pon motion by any party . . . an administrative law judge may reopen and review any award or order" on the grounds of "[c]hange of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order." KRS 342.125(1)(d). "[R]eopening of a claim under KRS 342.125(1)(d) involves the determination of a claimant's disability at two different times – the degree of disability when the claim is originally filed and the degree of disability when the claim is reopened." *Lakshmi Narayan*, *supra*, at 585.

The ALJ based his finding that Adams had sustained a post-award worsening of the impairment stemming from his abdominal injury on the following evidence: 1) Adams's own testimony that his bowel issues were ongoing and had rendered him practically unable to leave his house up to four days per week. The ALJ acknowledged that in his original 2019 opinion he had found that Adams was restricted to working in places with bathroom access, but ruled that based on the testimony upon reopening, this condition of fecal incontinence had worsened; (2) Dr. Anbu K. Nadar's medical report documenting Adams's multiple surgeries and resulting complications and his conclusion that Adams sustained a 15% whole person impairment; and (3) Dr. Leigh Ann Ford's report, following a battery of tests, that his psychological impairment had worsened from 5% with 2% pre-existing impairment to 6% with 2% pre-existing impairment.

Nesco argues that the ALJ erred in relying on Dr. Nadar's report because his findings do not support a 15% impairment rating under the elements listed in the AMA *Guides*. In the original award, Dr. Gregory T. Snider assigned a Class 1 impairment of 9% for "Upper Digestive Tract Disease" under Table 6-3 in the AMA *Guides*. That part of the Table sets forth the following elements of a Class 1 impairment:

**Class 1**
**0% - 9% Impairment of the Whole Person**

Symptoms or signs of upper digestive tract disease, or anatomic loss or alteration

**and**

continuous treatment not required,

**and**

maintains weight at desirable level,

**or**

no sequelae after surgical procedures.

Dr. Nadar assigned a permanent whole person impairment of 15%, which is within Class 2. Table 6-3 sets forth the elements of a Class 2 impairment:

**Class 2**
**10% - 24% Impairment of the Whole Person**

Symptoms and signs of upper digestive tract disease, or anatomic loss or alteration

**and**

requires appropriate dietary restrictions and drugs for control of symptoms, signs, or nutritional deficiency,

**and**

weight loss below desirable weight but does not exceed 10%.

It is undisputed that Adams did not suffer any weight loss in the period following the original award. Dr. Nadar acknowledged this but nonetheless assigned a Class 2 impairment for the following reasons:

> [Adams] does have permanent impairment. Using the Fifth Edition of the AMA guidelines, regarding the claim of 10/19/2015, he had been previously awarded a 9% for a class I impairment. He has, in my opinion, a class II impairment because of his ongoing symptoms from surgery to his small bowels with anatomic loss and requires treatment for his altered bowel, without any weight loss, and I would place him at 15% whole man impairment.

Dr. Nadar clearly believed that Adams's impairment did not fit into Class 1 because he did require ongoing treatment and had sequelae after surgical procedures.

Nesco argues that the ALJ's reliance on Dr. Nadar's report was erroneous as a matter of law, because Dr. Nadar did not find all three necessary criteria present to assign a 15% impairment rating under Class 2 because Adams had not lost weight. Nesco bases its argument on *Jones v. Brasch-Barry General Contractors*, which states:

> [It is well-established that] an ALJ cannot choose to give credence to an opinion of a physician assigning an impairment rating that is not based upon the AMA Guides. In other words, a physician's latitude in the field of workers' compensation litigation extends only to the assessment of a disability rating percentage within that called for under the appropriate section of the AMA Guides.

*Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 153-54 (Ky. App. 2006).

But Nesco's argument is premised on the assumption that an award can only be reopened successfully if the claimant shows an increased impairment rating under the *Guides*. Conversely, the Kentucky Supreme Court has held that a claimant need not establish a greater permanent impairment rating under the *Guides* in order to reopen a claim:

> KRS 342.125(1)(d) requires a change of disability to be shown by "objective medical evidence of a worsening . . . of impairment." The statute does not refer to the *Guides,* to permanent impairment rating, or to permanent disability rating. We conclude, therefore, that although a greater permanent impairment rating is objective medical evidence of a worsening of impairment, it is not the only evidence by which the statute permits a worsening of impairment to be shown. Chapter 342 does not define the term "objective medical evidence;" however, KRS 342.0011(33) does define "objective medical findings" as being "information gained through direct observation and testing of the patient applying objective or standardized methods." *See Staples, Inc. v. Konvelski*, 56 S.W.3d 412 (Ky. 2001); *Gibbs v. Premier Scale Company/Indiana Scale Company*, 50 S.W.3d 754 (Ky. 2001). Mindful that KRS 342.0011(1) requires a harmful change in the human organism to be evidenced by objective medical findings in order to be compensable, we are convinced that KRS 342.125(1)(d) and KRS 342.730(1) require no less at reopening. If such findings demonstrate that an injured worker suffers a greater loss, loss of use, or derangement of a body part, organ system, or organ function due to a condition caused by the injury, they demonstrate a worsening of impairment. A worsening of impairment

-9-

> may or may not warrant increasing the worker's permanent impairment rating under the *Guides.*

*Colwell v. Dresser Instrument Div.*, 217 S.W.3d 213, 218 (Ky. 2006).

Under this standard, Dr. Nadar's report constitutes objective medical evidence, based on his direct observation of Adams, that his condition had worsened, even if his condition did not meet one of the elements necessary to assign an increased impairment rating under Table 6-3. As the Board observed, the ALJ is entitled to give credence to an opinion based upon the *Guides* even if the opinion does not strictly adhere to the *Guides*. Dr. Nadar's diagnosis of a worsening of the abdominal condition is in accordance with the report of Dr. Gregory Snider, who examined Adams on behalf of Nesco, and found that his symptoms had worsened but that his ratable condition had not changed. Although Dr. Snider attributed this worsening of the symptoms to liver problems unrelated to the work injury, the ALJ was free to disregard this part of Dr. Snider's analysis. "Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or to disbelieve any part of the evidence, regardless of its source." *Dreisbach Wholesale Florists, Inc. v. Leitner*, 655 S.W.3d 763, 767 (Ky. App. 2022) (citations omitted). The ALJ was entitled to rely on Dr. Nadar's opinion in deciding whether Adams's condition had worsened.

Furthermore, Adams's own testimony about his condition supports the ALJ's finding. A worker's own testimony about his physical condition is

sufficient to prove his disability. "The rule is a worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured." *Time Warner Cable, Inc. v. Smith*, 635 S.W.3d 82, 87 (Ky. 2021) (internal quotation marks and citation omitted).

Nesco argues that Adams's testimony shows his bowel symptoms and need for reasonable access to restrooms have remained unchanged since the date of the original award and does not support the ALJ's finding that his condition had worsened. But Adams testified that his need to access a restroom immediately had increased in frequency and that he now suffered from constipation that was severe enough to require visits to the emergency room. He testified:

> I go from diarrhea to constipation. And, in fact, certain foods, like if I eat, I can eat and be fine and then if I eat the same thing the next day and it's like it just – it's always just went through me. I have to be close to a bathroom at all times. If I'm having bad days with my bowels, I – I really don't leave the house, you know, 'cause I don't you know, I miss out on – I miss out on ball games and stuff for my kids and it's kind of hard to go and do things with them because I got to be close to a bathroom at all times.

Adams also testified that in terms of the frequency of his bowel issues, he can have two or three good weeks "but now the bad days, I have – it could go from two, three, sometimes four days a week."

When he was questioned by counsel for Nesco, Adams explicitly testified that his bowels had gotten worse:

-11-

Q. And you testified at your hearing in 2019 about some of the different stomach issues that you had at the time.

A. Yeah.

Q. What has changed? **How have your symptoms changed since the hearing in 2019**?

A. Well, –

Q. And when I say symptoms, I'm referring to your abdominal issues.

A. Yeah. **My bowels have gotten worse**. I stay, like I said, I've been in and out of the hospital emergency room a couple of times, bowels not moving, constipation. It's constipation and then it's diarrhea, so it's – there have been times that I've had to change clothing because of this, so. It's kind of embarrassing –

. . .

Q. You mentioned constipation and diarrhea. Those were issues that you had back in 2019 as well, right:

A. Yeah. It's – I feel like it's gotten worse because now it's – and I know I've said it before, but if I go somewhere and there's no bathroom, we usually don't stop because we can't stay.

Q. How often do you have issues with that?

A. It goes back and forth, but now recently I ain't had a whole lot of diarrhea because I've been blocked, you know. It's been my bowels are not moving.

(Emphasis supplied.)

-12-

Adams plainly testified that his need to use the bathroom urgently had increased and that more recently he had been suffering from constipation severe enough to require visits to the emergency room. This testimony constitutes substantial evidence supporting the ALJ's finding that Adams's condition had worsened.

Finally, Nesco argues that because the ALJ erred in finding that Adams's condition had worsened, he also erred in considering whether Adams was now permanently totally disabled. In addition to its foregoing argument about the flaw in Dr. Nadar's report, Nesco argues that there is no other evidence in the record to support a finding of permanent total disability. Nesco points to evidence that Adams's lifting restrictions actually increased from 10 to 40 pounds, and the limiting ailments he developed after the original award, including low back pain, cirrhosis of the liver, pancreatitis, sleep apnea, heart attack, and knee pain, were unrelated to his work injury. Nesco also emphasizes that his psychological impairment increased by only 1%.

The ALJ's decision that Adams is permanently totally disabled is nonetheless supported by Dr. Nadar's finding that his condition had worsened due to his ongoing symptoms and need for treatment and by Adams's own testimony. Indeed, a claimant's own testimony is sufficient to support a finding of physical or psychological disability. The Kentucky Supreme Court has stated that "[d]isability

-13-

is a question of fact to be determined by the Board, and we know of no rule which requires the employee to produce medical proof." *Time Warner Cable, Inc.*, 635 S.W.3d at 88 (quoting *Johnson v. Skilton Const. Corp.*, 467 S.W.2d 785, 788 (Ky. 1971)).

> [L]ay witnesses, including the claimant, cannot give opinion testimony, but it is not impossible for them to provide enough factual information for the [ALJ] to draw valid conclusions with respect to the extent and duration of disability. A claimant, like any lay witness, may not undertake to make a prognosis, but he may state facts concerning his condition and these facts may be of such a nature as to enable the [ALJ] to determine the extent and duration of the disability even in the absence of medical testimony.

*Id*. (citation omitted).

The ALJ's finding of permanent total disability is supported by substantial medical and lay evidence and the Board did not overlook or misconstrue controlling law or flagrantly err in evaluating in that evidence when it affirmed the ALJ's award.

## **CONCLUSION**

The opinion of the Board is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Aaron D. Reedy
Lexington, Kentucky

BRIEF FOR APPELLEE TRAVIS
ADAMS:

Dennis James Keenan
South Williamson, Kentucky