RENDERED: JUNE 15, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2016-SC-000407-WC

LKLP CAC INC.                                                             APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2016-CA-000163-WC
V.                          WORKERS' COMPENSATION BOARD
NO. 09-WC-97826

BRANDON FLEMING;                                          APPELLEES
HON. R. ROLAND CASE,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

In 2010, an Administrative Law Judge (ALJ) awarded Brandon Fleming permanent partial disability benefits based on a finding that Fleming had a physical impairment rating of 13% and a psychological impairment rating of 5% for a combined permanent impairment rating of 17%. Fleming filed a motion to reopen his claim in 2014 alleging that his condition had worsened. A different ALJ found that Fleming had a physical impairment rating of 23% and a psychological impairment rating of 12% for a combined permanent

impairment rating of 32%.[1]  LKLP CAC Inc. (LKLP) appealed, and a divided Workers' Compensation Board (the Board) affirmed.  LKLP then sought review before the Court of Appeals, which also affirmed.  Before us, as it did before the Board and the Court of Appeals, LKLP argues that the ALJ's opinion is not supported by evidence of substance because the ALJ relied on a physician who stated that Fleming's permanent impairment rating had not changed following the 2010 opinion and award.  As did the majority of the Board and the Court of Appeals, we disagree that the ALJ's findings are not properly supported by the evidence and affirm.

## I. BACKGROUND.

Fleming worked as a youth director for LKLP, a community action agency.  On October 22, 2007, Fleming suffered a work-related back injury when the van he was driving was struck from behind.  In September 2008, Fleming underwent lumbar spine fusion surgery, which initially alleviated some of his leg symptoms, and he returned to work.  However, Fleming continued to suffer from low back pain that was aggravated by standing or sitting for long periods and he stopped working in August 2010.  We note that, in addition to his physical complaints, Fleming complained of irritability and depression. However, the only issues before us are related to Fleming's physical.

---

[1] The 17% and 32% permanent impairment ratings were calculated using the "Combined Values Chart" on pages 604-06 in Linda Cocchiarella and Gunnar B.J. Andersson, AMA Guides to the Evaluation of Permanent Impairment (5th ed. 2012).

complaints; therefore, we do not further address Fleming's psychological condition.

LKLP disputed the work-relatedness of Fleming's injury, and Fleming filed a claim for benefits. During the litigation of that claim, the parties introduced the following pertinent medical evidence. Dr. David Herr diagnosed Fleming with a herniated disc at L5-S1 that had been surgically repaired. He assigned Fleming a 13% permanent physical impairment rating and stated that Fleming should avoid heavy lifting and repetitive bending and should change positions frequently.

Based on that evidence, the ALJ found that Fleming had a 13% permanent physical impairment rating and that Fleming was capable of performing the type of work he performed at the time of his injury. Therefore, the ALJ did not award Fleming the three multiplier under Kentucky Revised Statute (KRS) 342.730(1)(c)1.

On March 26, 2014, Fleming filed a motion to reopen, alleging that his condition had worsened. During the reopening litigation, the parties filed the following pertinent evidence.

Fleming testified that, after the 2010 opinion and award, his back and leg pain increased, and he was no longer able to: work, mow his lawn, perform most non-sedentary household chores, or drive long distances. In an attempt to alleviate his pain, Fleming had undergone implantation of a spinal cord stimulator in 2011. That device proved to be helpful in partially alleviating

3

Fleming's leg symptoms; however, his physician had to remove it within a year because of a malfunction.

In addition to his testimony, Fleming filed voluminous medical records as well as reports from Drs. Brackett and Guberman. Dr. Brackett stated that Fleming has a 47% permanent impairment rating, 15% attributable to his cervical spine, 6% attributable to his thoracic spine, and 28% attributable to his lumbar spine. Furthermore, Dr. Brackett stated that Fleming could not return to the type of work he performed at the time of his injury, and that Fleming should avoid: prolonged walking, standing, stooping, squatting, hip bending, climbing, and excessive flexion, extension, and rotation of his back. Dr. Guberman stated that Fleming has a 28% permanent impairment rating, which reflects a 15% increase from the permanent impairment rating initially assessed by the ALJ. Dr. Guberman also stated that Fleming should avoid prolonged sitting, traveling, carrying, lifting, pushing, and pulling. Finally, Fleming filed a functional capacity assessment indicating that he could perform light and sedentary work as long as he could frequently change positions.

LKLP filed a medical report from Dr. Vaughan and the transcript of Dr. Vaughan's deposition. Dr. Vaughan, who did not evaluate Fleming during the initial litigation, stated that Fleming has a 23% permanent impairment rating, should avoid lifting more than 25 pounds and repetitive bending and twisting, and should alternate between sitting and standing. Dr. Vaughan stated that he would have assigned the same permanent impairment rating and imposed the same restrictions if he had seen Fleming following his surgery. LKLP also

4

filed a functional capacity assessment that indicated Fleming could perform a wide range of sedentary to medium level work.

The ALJ undertook a thorough review of the evidence and concluded that Fleming is not totally disabled. However, the ALJ found that Fleming's permanent physical impairment rating had increased from 13% to 23%. The ALJ also found that Fleming is incapable of returning to his pre-injury work activity, and he awarded permanent partial disability benefits accordingly. In determining Fleming's permanent impairment rating, the ALJ stated as follows:

> The Administrative Law Judge in the original claim found the plaintiff had a 13% physical impairment. This finding is res judicata. The Administrative Law Judge has reviewed the medical evidence and is persuaded by the IME report done at the request of the defendant-employer that the plaintiff now has a 23% impairment rating. The impairment rating of Dr. Brackett is rejected since it includes impairment ratings for the thoracic and cervical area. Dr. Guberman assessed a 15% impairment but after comparing the reports of Dr. Guberman and Dr. Vaughn [sic], the Administrative Law Judge is persuaded by the report of Dr. Vaughn [sic] that the plaintiff has a 23% impairment rating. Since the plaintiff only had a 13% impairment rating at the time of the original opinion and now has a 23% impairment, there has obviously been an increase in his impairment and the Administrative Law Judge will so find. As previously indicated the findings of the 13% impairment in the original opinion is res judicata and the defendant cannot now argue that he actually had a 23% impairment the whole time.

As previously noted, the Board and the Court of Appeals affirmed this opinion by the ALJ.

## II. STANDARD OF REVIEW.

The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). In

5

reaching his decision, the ALJ is free to choose to believe or disbelieve parts of the evidence from the total proof, no matter which party offered it. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). If the party with the burden of proof is successful before the ALJ, the question on appeal is whether the ALJ's opinion was supported by substantial evidence. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). Substantial evidence is evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971). However, the ALJ's discretion is not limitless and we will reverse the ALJ if his opinion "is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Ira A. Watson Dep't. Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). Furthermore, when there are mixed questions of fact and law, we have greater latitude in determining if the underlying decision is supported by the evidence. *Purchase Transp. Servs. v. Estate of Wilson*, 39 S.W.3d 816, 817-18 (Ky. 2001); *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991).

### III. ANALYSIS.

KRS 342.125(1) provides in relevant part that "an administrative law judge may reopen and review any award or order" upon a showing of a "[c]hange of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order." While KRS 342.125 permits an ALJ's award to be

6

reopened with regard to a change in disability, it does not permit that award to be reopened for all purposes.

> [O]nce an ALJ-adjudicated award and order becomes final, the ALJ's determinations with respect to, *e.g.*, causation, notice, apportionment, etc., cannot be readdressed under KRS 342.125 except upon an allegation of fraud, newly discovered evidence, or mistake, grounds that do not exist and are not asserted in this case. The reason, of course, is that revisiting issues previously decided is precluded by the principle of res judicata.

*Garrett Mining Co. v. Nye*, 122 S.W.3d 513, 522 (Ky. 2003). Although not specifically in the list of final non-reviewable determinations, an ALJ's finding regarding a claimant's permanent impairment rating at the time of the initial award is non-reviewable once final. We reach this conclusion for two reasons. First, a finding of a permanent impairment rating, like a finding as to causation, notice, etc., is a threshold issue that forms the basis of an award. Second, in *Garrett Mining,* the Court held that an ALJ could not award benefits based on a 100% disability when a prior ALJ had found that 22% of the claimant's disability actively pre-existed his injury. *Id.* at 522-23. Because a permanent impairment rating forms the basis for an award of disability benefits, it cannot be ignored any more than a finding of pre-existing disability can be. Thus, we agree with the ALJ, the majority of the Board, and the Court of Appeals that the first ALJ's finding that Fleming had a 13% permanent impairment rating is *res judicata* and that baseline rating cannot be revised on reopening absent factors that are not present herein. To be clear, on reopening, an ALJ can find that a claimant's permanent impairment rating has increased; however, an ALJ on reopening cannot revisit a predecessor's finding

7

regarding a claimant's permanent impairment rating. The initial permanent impairment rating is the baseline which the ALJ must use on reopening to determine if there has been any increase. We recognize that KRS 342.125 states that an ALJ on reopening can find an increase or decrease in "impairment." However, as set forth below, "impairment" and "permanent impairment rating," although related, are not the same.

Having determined that the initial ALJ's finding that Fleming had a 13% permanent impairment rating is not subject to alteration on reopening, we must determine if the ALJ's finding of a 23% permanent impairment rating on reopening is appropriate. Before undertaking that analysis, we set forth the difference between "impairment," as used in KRS 342.125, and "permanent impairment rating."

"Impairment" involves the "loss of use, or derangement of a body part, organ system, or organ function due to a condition caused by the injury." *Colwell v. Dresser Instrument Div.*, 217 S.W.3d 213, 218 (Ky. 2006). Thus, impairment involves a claimant's ability to function. "Permanent impairment rating" is the "percentage of whole body impairment caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment.'" KRS 342.0011(35). A permanent impairment rating measures the impact an impairment has on a claimant's ability to perform activities of daily living and is used in the Workers' Compensation Act to

determine the extent of partial disability.[2] *Colwell*, 217 S.W.3d at 217. Thus, a permanent impairment rating is a number used to quantify the extent to which an injury impedes a worker's ability to function.

On reopening, an ALJ may find that a claimant who was initially permanently partially disabled is permanently totally disabled if the claimant has established his impairment has increased to the extent that he is no longer able to work as defined in KRS 342.0011(34). *Id.* at 218. In such cases, the ALJ is not required to find, and the claimant is not required to establish, that he has an increase in permanent impairment rating. *Id.* On the other hand, in order to find that a claimant who was initially permanently partially disabled only has an increase in that partial disability, the ALJ must find that the claimant's impairment and permanent impairment rating have increased. *Id.* This is so because KRS 342.125 requires a claimant to show an increase of impairment on reopening and the extent of a claimant's permanent partial disability is inexorably tied to the claimant's permanent impairment rating. *Id.* *See also*, KRS 342.730(1)(b). In other words, to show a change from a permanent partial disability to a permanent total disability on reopening, a claimant need only show an increase in impairment, *i.e.*, additional loss of the use of body part, organ, etc. However, to show an increase in permanent

---

[2] Pursuant to KRS 342.0011(11)(c) and KRS 342.0011(36), a claimant must also have a permanent impairment rating in order to qualify for permanent total disability. Fleming has not challenged the ALJ's finding of only an increase in permanent partial disability; therefore, our analysis focuses on permanent partial disability.

partial disability on reopening, a claimant must show both an increase in impairment and in permanent impairment rating.

Applying the preceding to this matter, it is clear that Fleming has established that he had an increase in permanent impairment rating. The initial ALJ found that Fleming had a 13% permanent impairment rating, a finding that is *res judicata, i.e.,* "[a]n issue that has been definitively settled by judicial decision." Black's Law Dictionary (10th ed. 2014). The current ALJ found that Fleming has a 23% permanent impairment rating. By using simple arithmetic, it is clear that Fleming has a 10% greater permanent impairment rating now than he had in 2010.

We recognize LKLP's argument that Dr. Vaughan stated that Fleming had a 23% permanent impairment rating in 2010. However, Dr. Vaughan did not evaluate Fleming in 2010, was not the finder of fact in 2010, and was not the finder of fact on reopening. It is the fact finder's opinion regarding a claimant's permanent impairment rating that controls, not the opinion of a physician. As noted above, the ALJ was free to choose what evidence to believe. He chose to believe Dr. Vaughan, who opined that Fleming has a 23% permanent impairment rating, which is greater than the initial baseline permanent impairment rating of 13%. As did the majority of the Board and the panel of the Court of Appeals, we discern no abuse of discretion in the ALJ's choice.

Furthermore, we note that, had the ALJ chosen not to rely on Dr. Vaughan's permanent impairment rating, he could have relied on Dr. Guberman's permanent impairment rating or Dr. Brackett's lumbar spine

10

permanent impairment rating, either of which would have resulted in a finding of a 15% increase in permanent impairment rating.

We note LKLP's argument that Fleming "could have filed other evidence of impairment during the original litigation. He chose not to. He can not [sic] now re-litigate by disguising evidence of a higher impairment at the time of the original ALJ decision as new evidence of a worsening. The ALJ's decision is ultimately allowing such re-litigation." While, that argument initially has some appeal, its underlying premise is flawed. There was no evidence during the initial litigation that Fleming had a 23% permanent impairment rating. Certainly, Fleming may have been able to obtain such an opinion. If he had done so and the ALJ had rejected that evidence, he would not now be able to argue that the rejected permanent impairment rating amounted to new evidence of an increase in permanent impairment rating. However, the same holds true for LKLP. It could have obtained an opinion that Fleming had a permanent impairment rating other than 13%, but it chose not to do so. Just as Fleming could not argue that rejected evidence supported an increase in permanent impairment rating, LKLP cannot now argue that evidence that did not exist at the time of the initial litigation is binding on that issue before the ALJ on reopening.

Having determined that Fleming established that he has an increased permanent impairment rating, we must address whether Fleming established a "[c]hange of disability as shown by objective medical evidence of worsening . . . of impairment." KRS 342.125. As this Court stated in *Colwell*, "greater

11

permanent impairment rating is objective medical evidence of a worsening of impairment." 217 S.W.3d at 218. Thus, when the ALJ found that Fleming has an increased permanent impairment rating, he simultaneously found that Fleming had an increase in impairment. Furthermore, we note that the initial ALJ found that Fleming's restrictions permitted him to return to the type of work he performed at the time of his injury. The ALJ on reopening found that Fleming is not capable of performing that type of work, which is evidence of a change in impairment. That finding by the ALJ is supported by Fleming's self-reported restrictions, the restriction against travelling imposed by Dr. Guberman, and Dr. Brackett's opinion that Fleming cannot return to that type of work. Therefore, we discern no abuse of discretion in the ALJ's finding that Fleming has a change in disability as shown by objective medical evidence of worsening of impairment.

## IV. CONCLUSION.

We discern no abuse of discretion in the ALJ's finding that Fleming has an increase in his permanent impairment rating, in his impairment, and in his disability. Therefore, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Hugh Brettelle Stonecipher
Ryan Thompson
Fogle Keller Purdy, PLLC

COUNSEL FOR APPELLEE, BRANDON FLEMING:

John Earl Hunt

12