RENDERED: AUGUST 29, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000627-WC

LAFARGE HOLCIM                                                                                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                              CASE NO. 2018-CA-000414-WC
WORKERS' COMPENSATION BOARD NO. 16-WC-90245

JAMES SWINFORD,                                                                          APPELLEES
HON. W. GREG HARVEY, ADMINISTRATIVE
LAW JUDGE, AND WORKERS'
COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE WRIGHT**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

## I. BACKGROUND

James Swinford worked as a bulldozer operator for Lafarge Holcim when he was injured on the job on March 10, 2016. That day, the ground where he was moving dirt caved in causing him to crash the dozer down an embankment. He remained in the equipment for seven hours after the crash until he was rescued by boat and removed from the pit. Swinford was seventy-five years old on the day of the accident and had worked for Lafarge or its predecessor for more than four decades.

After the accident, Swinford had what he described as a "crick" in his neck. This pain in his neck worsened and was accompanied by pain and weakness radiating into his right arm. He has not worked since the date of his work-related injury.

The Administrative Law Judge (ALJ) awarded Swinford permanent partial disability (PPD) benefits based on his treating doctor's impairment rating of 15%. That award and the duration of Swinford's benefits were appealed to the Workers' Compensation Board and then the Court of Appeals. They are also the subject of this present appeal.

## II. ANALYSIS

### A. Pre-existing Condition

Lafarge argues Swinford did not meet his burden of proving the extent of the injury attributable to his work injury. He asserts that Dr. Strenge (Swinford's treating physician) acknowledged Swinford had a prior cervical surgery in the 1990s which resulted in chronic numbness and pain in his right hand and neck pain. Dr. Strenge indicated the work injury caused some worsening of both the neck pain and the right-arm numbness and thought Swinford was entitled to a permanent impairment rating of 15%. Lafarge argues Dr. Strenge did not specifically state whether the entire impairment was caused by the 2016 injury and that he did not address any impairment rating related to Swinford's cervical fusion. Further, Lafarge asserts Dr. Strenge's opinion fell short of establishing a permanent impairment resulting from his 2016 accident at work.

2

The ALJ awarded Swinford permanent partial disability (PPD) benefits based on his treating doctor's impairment rating. On appeal, both the Board and Court of Appeals affirmed on this issue. Lafarge asks us to reverse and hold that Swinford is not entitled to benefits, as he failed to sustain his burden of proof.

In reviewing questions of fact, we are mindful that "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). We have held:

> KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

*Abel Verdon Const. v. Rivera*, 348 S.W.3d 749, 753-54 (Ky. 2011) (footnotes omitted). Furthermore, "[w]here the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence means evidence of substance and relevant

consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky. 1971).

Here, Swinford had the burden of proof, as Lafarge asserts. Because Swinford, the party with the burden of proof, received a favorable determination from the ALJ, our review is to determine whether the ALJ's conclusion was based on substantial evidence. *Whittaker,* 998 S.W.2d at 481.

In his opinion, the ALJ summarized Swinford's testimony. The ALJ noted that Swinford had neck surgery twenty years ago following nerve damage in his hands. Swinford testified he had taken medication for the nerve damage for the past ten to fifteen years, but also pointed out that after the surgery, he had worked full duty without any restrictions for more than two decades until the present injury. The ALJ quoted Swinford's comparison of his condition before and after the work injury. In that testimony, Swinford said that he worked 12-hour shifts at least five days a week before the work-related injury. Following the injury, the only work he could do was to mow the yard or comparable tasks. According to Swinford, his neck bothers him more and gets tired easily. At the hearing, Swinford said that he had been willing to attempt returning to his old job, but he did not think he could actually do the work.

The ALJ also summarized the medical evidence presented by the parties. Dr. Strenge, an orthopedic surgeon, was Swinford's treating physician. Dr. Strenge noted that Swinford had a prior cervical surgery, but was able to work without restrictions following surgery until the time of his accident. According to Dr. Strenge, an MRI performed two months after the work injury showed

4

that Swinford has a T1-T2 disk herniation and mind central and foraminal stenosis. He diagnosed Swinford with disk herniation as a result of the bulldozer accident, which had exacerbated his neck pain and caused worsening of his right arm numbness and new onset of right tricep weakness. He assigned a 15% whole body impairment stating that Swinford has a disk herniation "with significant radiculopathy and focal weakness in his right triceps . . . ."

The ALJ also summarized the medical evidence contained in Dr. Ruxer's report. Swinford saw Dr. Ruxer for a consultation in the course of his treatment. He noted Swinford's prior neck surgery and the fact that he had worked without restrictions until the 2016 work accident. He also noted a worsening of Swinford's neck and right arm pain and recommended continued treatment.

The ALJ also discussed the office records from Baptist Occupational Medicine. The records from the date of Swinford's injury noted "no pain, but neck is sore." He was referred to physical therapy and prescribed Ibuprofen. Two follow-up visits were also included in the records. During these visits, Swinford complained of increasing neck and right arm pain, and a "catch" when extending his neck. An MRI was ordered along with a follow-up appointment, but the record for the follow-up was not submitted into evidence.

Finally, the ALJ discussed Dr. Weiss's independent medical evaluation, which Lafarge had submitted into evidence. In Dr. Weiss's opinion, the MRI showed no evidence of neural impingement or disk herniation—only

5

generalized cervical spondylosis that would be typical for a seventy-five-year-old man. Dr. Weiss opined that Swinford showed no evidence of a structural abnormality and gave no impairment rating. He did, however, note that Swinford's symptoms were related to his work injury.

The ALJ acknowledged that the medical evidence was varied. He indicated that Drs. Strenge and Ruxer "have opined that Swinford suffers from an exacerbation of a dormant condition in his spine caused" by the work accident. He also noted that Dr. Weiss found no evidence of a structural abnormality in Swinford's spine.

As discussed, the ALJ "has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *Fleming*, 520 S.W.3d at 386. Here, the ALJ found Swinford to be a credible witness. He noted Swinford was working full time and did not aggrandize his symptoms. The ALJ believed Swinford's testimony that his condition changed and worsened following the incident. The ALJ chose to rely on the medical opinion testimony of Drs. Strenge and Ruxer in his finding that Swinford's worsening symptoms were a result of his work injury sustained on March 10, 2016.

The ALJ also addressed Lafarge's argument that Swinford's condition was pre-existing and active. We look to the analysis contained in *Finley v. DBM Techs.*, 217 S.W.3d 261 (Ky. App. 2007) "when a 'work-related injury' arouses a pre-existing dormant condition." *Bolster and Jeffries Health Care Group, LLC v. Mayhew*, 2018-SC-000202-WC, 2019 WL 1168018, at *4 (Ky. Feb. 14, 2019).

6

In *Finley*, the Court of Appeals held: "[t]o be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA *Guidelines* immediately prior to the occurrence of the work-related injury. Moreover, the burden of proving the existence of a pre-existing condition falls upon the employer." *Finley*, 217 S.W.3d at 265.

In addressing the *Finley* factors, the ALJ considered the fact that Swinford had been working full time without any restriction as a heavy equipment operator for more than two decades after his cervical fusion surgery. The ALJ relied on Dr. Strenge's opinion that Swinford suffered a disk herniation in the work accident and that he experienced weakness in his triceps that was not present before the accident. The ALJ stated that he relied

> upon the opinions of Dr. Ruxer and Dr. Strenge in finding that Swinford had both an exacerbation of a dormant condition that was brought into disabling reality with respect to his right arm numbness and a new injury as documented by Dr. Strenge with regard to the disk herniation at T1-T2 and the triceps weakness.

The ALJ thoroughly documented the evidence in the case and discussed which pieces he found credible and relied upon in reaching his conclusions. The ALJ relied upon substantial evidence in finding Swinford's work injury to be the combination of the exacerbation of a dormant pre-exiting condition and a new injury. He also relied upon substantial evidence (Dr. Strenge's rating) in determining that Swinford has a 15% whole body impairment resulting from his work-related injury. Therefore, we affirm the Court of Appeals on this issue.

## B. Retroactivity of KRS 342.730(4)

Lafarge also asserts that the Court of Appeals erred in addressing the retroactivity of KRS 342.730(4) at all—and, in the alternative, in holding that the statute is not retroactive. For the following reasons, while we hold the Court of Appeals was correct in addressing the issue, we reverse its holding that the statute is not retroactive.

The ALJ acknowledged this Court's opinion in *Parker v. Webster County Coal, LLC (Dotiki Mine)*, 529 S.W.3d 759 (Ky. 2017), in which we found the then-current version of KRS 342.730(4) unconstitutional on equal protection grounds. Since a portion of the statute had been ruled unconstitutional, the ALJ applied an earlier version of the statute which included a tier system. On appeal to the Workers' Compensation Board, Swinford argued he should receive the full 425-week award without the tier system from the previous version of the statute utilized by the ALJ. Lafarge argued the award should state that benefits should be payable to Swinford "for so long as he is eligible to receive them in accordance with KRS 342.730(4)." Lafarge noted that there were legislative efforts underway to re-examine the duration of benefits payable to older claimants under the Workers' Compensation Act.

The Board held that Swinford was entitled to the full 425-week period and Swinford did not pursue further appeal. Lafarge appealed to the Court of Appeals on this issue (along with the previously-discussed issue concerning Swinford's pre-existing condition). Lafarge pointed out that proposed legislation pending before the Kentucky General Assembly may further amend

8

KRS 342.730. While the appeal was pending before the Court of Appeals, the amendment became effective. The amended version of KRS 342.730(4) reads:

> All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee reaches the age of seventy (70), or four (4) years after the employee's injury or last exposure, whichever last occurs. In like manner all income benefits payable pursuant to this chapter to spouses and dependents shall terminate as of the date upon which the employee would have reached age seventy (70) or four (4) years after the employee's date of injury or date of last exposure, whichever last occurs.

In determining which version of the statute to apply, the Court of Appeals discussed whether the statute was retroactive, and held that it was not. Therefore, it applied the statute in force at the time of Swinford's injury after severing the portion this Court had held unconstitutional. Based on that statute, it held that Swinford was entitled to receive benefits for 425 weeks.

On appeal to this Court, Lafarge argues that the Court of Appeals overstepped its bounds by addressing whether the newly-amended version of KRS 342.730(4) was retroactive. It argues that "the award in place in favor of Swinford indicated that permanent partial disability benefits would be payable for a period of 425 weeks, without limitation. The only issue regarding that award was whether the 425[-]week duration was correct." However, we fail to see how the Court of Appeals could have analyzed the duration of benefits without first ascertaining which version of the statute applied. Lafarge made the duration of benefits an issue. It cannot now complain that the Court of Appeals resolved this issue by determining whether a newly-amended statute impacting the duration of those benefits was applicable.

9

Lafarge asserts that even if the statute's retroactivity was properly before the Court of Appeals, that court erred in holding that KRS 342.730(4) was not retroactive. This difficult issue was created by the failure to codify subsection (3) of Section 20 of 2018 Ky. Acts ch. 40 as part of the Kentucky Revised Statutes (KRS). Codification means "[t]he process of compiling, arranging, and systematizing the laws of a given jurisdiction . . . ." CODIFICATION, Black's Law Dictionary (11th ed. 2019). "The Legislative Research Commission shall formulate, supervise, and execute plans and methods for . . . codification[] and arrangement of the official version of the Kentucky Revised Statutes." KRS 7.120(1). Subsection (2) of KRS 7.120 requires that "[t]he Commission shall prepare and submit to the General Assembly such consolidation, revision, and other matters relating to the statutes as can be completed from time to time."

After the legislature has passed an act and it is signed into law, then the official version of the Kentucky Revised Statutes shall be maintained by the Legislative Research Commission. KRS 7.131(1) ("[t]he Legislative Research Commission shall maintain the official version of the Kentucky Revised Statutes . . . ."). Furthermore, "[t]he official version of the Kentucky Revised Statutes shall contain all permanent laws of a general nature that are in force in the Commonwealth of Kentucky." KRS 7.131(2). The General Assembly has mandated that courts shall rely on that official version. KRS 7.138(2)(a) states, "[i]n any judicial or administrative proceeding, the text of any codified Kentucky statute which is submitted or cited by a party or *upon which the court . . . relies*

10

*shall be that text contained in the official version of the Kentucky Revised Statutes . . . ."* (Emphasis added.)

The maintenance of the Kentucky Revised Statutes is vital for research and understanding the laws under which we must live, function and plan future actions. Anyone who is seeking to know the law researches the Kentucky Revised Statutes. It would be impractical and extremely difficult if people had to search all the acts of every legislative session in order to advise clients or know what law to follow. It is essential that the official version of the Kentucky Revised Statutes be accurate and up to date.

The reviser of statutes "shall be appointed by the [Legislative Research] Commission upon recommendation of the director." KRS 7.140(1). The reviser of statutes has the duty to execute the functions set forth in KRS 7.120, 7.131, 7.132, 7.134, 7.136, 7.138, and 7.140 for the Legislative Research Commission. KRS 7.140(1). This includes the duty to "formulate, supervise, and execute plans and methods for . . . codification[] and arrangement of the official version of the Kentucky Revised Statutes." KRS 7.120(1). The reviser of statutes has the duty to prepare and submit to the General Assembly such revisions of the statutes as can be completed from time to time. KRS 7.120(2). The reviser of statutes also has the duty to execute the Legislative Research Commission's function of maintaining the official version of the Kentucky Revised Statutes. KRS 7.131.

The dilemma facing the Court in this case is that portions of the Act passed by the General Assembly were completely omitted from the official

11

version of the Kentucky Revised Statutes. A Legislative Research Commission note appears below the official version of KRS 342.730(4) stating:

> This statute was amended in Section 13 of 2018 Ky. Acts ch. 40. . . . . Subsection (3) of Section 20 of that Act reads, "Subsection (4) of Section 13 of this Act shall apply prospectively and retroactively to all claims: (a) For which the date of injury or date of last exposure occurred on or after December 12, 1996; and (b) That have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of this Act."

However, it failed to include it in the official version of KRS 342.730. KRS 7.134(1)(c) requires that certified versions of the Kentucky Revised Statutes shall contain "[t]he text of laws contained in the applicable version of the Kentucky Revised Statutes . . . ." Subsection (1)(f) provides that the Legislative Research Commission and the reviser of statutes may include "[a]ny annotations, historical notes, and other information that the Commission deems appropriate to include." These two subsections make it clear that the text of laws in the official version of the Kentucky Revised Statutes and the Legislative Research Commission notes are separate and distinct.

Lafarge points out that "not all legislation passed by our Legislature becomes codified." Lafarge's argument is based on the example of the budget of the Commonwealth of Kentucky which has the force of law but is not embodied in any statute. KRS 7.131(2) requires that "[t]he official version of the Kentucky Revised Statutes shall contain all permanent laws of a general nature that are in force in the Commonwealth of Kentucky." Subsection (3) of that statute specifically provides that "the Commission may omit all laws of a private, local, or temporary nature, including laws for the appropriation of

12

money . . . ." The statute requires that all permanent laws of a general nature shall be included in the official version of the Kentucky Revised Statutes, but the Commission may omit laws for the appropriation of money (i.e., the budget).

While the Act in the present case is not an appropriations bill, those are not the only laws exempt from codification. KRS 7.131(3) states that the Legislative Research Commission "may omit all laws of a private, local, or temporary nature." Here, the language in the Act regarding retroactivity is temporary. It applies to those cases which "have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal as not lapsed, as of the effective date of this Act." For any new injuries and claims, the retroactivity of the Act will not be an issue. Therefore, the language is only relevant to a particular time frame and once cases arising during that time frame are fully adjudicated, it will be unnecessary. Therefore, due to the temporary nature of the language regarding retroactivity in the Act, codification was not required.

Lafarge cites *Baker v. Fletcher*, 204 S.W.3d 589 (Ky. 2006), a case concerning a budget act. Therein, we stated, "[t]hough it is clear that the General Assembly must expressly manifest its desire that a statute apply retroactively, magic words are not required." *Id.* at 597. In that case, we looked to language contained in the Act in question in order to determine that the legislature intended that it apply retroactively. As noted, budgets are exempt from codification requirements—as are temporary laws. Therefore, in

13

both that case and the case at bar this Court may go to the language of the Act to determine retroactivity.

This Court has great respect for the language the General Assembly included in the official Kentucky Revised Statutes. The General Assembly made a clear pronouncement regarding retroactivity in KRS 446.080(3): "[n]o statute shall be construed to be retroactive, unless expressly so declared." With no mention of retroactivity or any language from which retroactivity may be inferred, the express language of KRS 342.730(4) does not make the statute retroactive. However, the Legislative Research Commission note following the statute references the Act from which the statute was enacted and, as discussed, is exempt from the codification requirements, as it is temporary in nature. Thus, the legislature has made a declaration concerning retroactivity in this case.

Since the newly-enacted amendment applies retroactively, it must be used to determine the duration of Swinford's benefits. We remand this matter to the ALJ to apply the time limits set out in the 2018 amendment to KRS 342.730(4).

While Swinford attempted to belatedly challenge the constitutionality of the amendments to KRS 342.730(4), it did so only after the Court of Appeals had rendered its opinion. The Court of Appeals denied that issue as moot. Swinford did not file a cross-appeal to this Court to address that issue. Therefore, the constitutionality of the statute is not at issue before us in this

14

case. Furthermore, the Attorney General was not timely notified of a constitutional challenge pursuant to KRS 418.075.

## III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals in part, reverse in part, and remand this matter to the ALJ for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Douglas Anthony U'Sellis
U'Sellis Mayer & Associates

COUNSEL FOR APPELLEE JAMES SWINFORD:

Charles Tveite
Edwards & Kautz PLLC

COUNSEL FOR APPELLEE W. GREG HARVEY:

Walter Greg Harvey
Administrative Law Judge

COUNSEL FOR APPELLEE WORKERS' COMPENSATION BOARD:

Michael W. Alvey
Worker's Compensation Board

COUNSEL FOR AMICI CURIAE, DAVID W. OSBORNE, SPEAKER OF THE KENTUCKY HOUSE OF REPRESENTATIVES, AND ROBERT STIVERS, PRESIDENT OF THE KENTUCKY SENATE:

David E. Fleenor
Office of the Senate President

R. Vaughn Murphy
Office of Senate President

David Eric Lycan
Office of the Speaker of the House of Representatives

Tyler Peavler
Office of the Speaker of the House of Representatives


COUNSEL FOR AMICI CURIAE, KENTUCKY CHAMBER OF COMMERCE, NORTHERN KENTUCKY CHAMBER OF COMMERCE, GREATER LOUISVILLE, INC., COMMERCE LEXINGTON, INC., KENTUCKY LEAGUE OF CITIES, AND KENTUCKY COAL ASSOCIATION:

Brent Robert Baughman
Bingham Greenebaum Doll, LLP

Richard Clayton Larkin
Dinsmore & Shohl, LLP

Kyle William Miller
Bingham Greenebaum Doll, LLP


COUNSEL FOR AMICUS CURIAE, KENTUCKY WORKERS ASSOCIATION:

Peter J. Naake
Priddy, Cutler, Naake & Meade, PLLC


COUNSEL FOR AMICUS CURIAE, KENTUCKY CHAPTER OF AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS:

Udell Barry Levy
Jennings Law Office