# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 19, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000460-WC

FINAL

DATE 1|17|2020

JUDY CONSTRUCTION                                       APPELLANT

V.           ON REVIEW FROM COURT OF APPEALS
                  CASE NO. 2017-CA-001462-MR
       WORKERS' COMPENSATION BOARD NO. 15-WC-59605

SHAWN SMITH,                               APPELLEES
HON. MONICA RICE-SMITH,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Appellee, Shawn Smith, began working for Appellant, Judy Construction, on January 2, 2015. On December 2, 2015, Smith suffered several injuries as the result of an accident that occurred on a construction site during the course of his employment with Judy Construction. Judy Construction accepted the injuries as work-related and covered Smith's medical bills. As is relevant herein, the Administrative Law Judge (ALJ) found that the 15% penalty pursuant to KRS 342.165[1] was not applicable as "[t]he accident occurred not

---

[1] KRS 342.165(1) reads:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment. If an accident is caused in any degree by the

as result of any willful misconduct of [Smith] but due to a simple act of negligence." The ALJ later overruled Judy Construction's petition for reconsideration regarding the safety penalty violation.

Judy Construction appealed to the Workers' Compensation Board, arguing that the ALJ erred in declining to reduce Smith's award of benefits by 15% pursuant to KRS 342.165(1). The Board affirmed the ALJ. Judy Construction appealed the Board's decision to the Court of Appeals, which also affirmed. Judy Construction now appeals the Court of Appeals' decision to this Court as a matter of right. *See Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990); Ky. Const. § 115.

## I. BACKGROUND

Smith began working as a laborer for Judy Construction in January 2015. He testified that Judy Construction had a safety sheet they went over every morning that contained safety procedures. One of these procedures required that employees wear safety harnesses if they were working on a surface fifteen or more feet high. On the day the accident occurred, Smith was working on a bridge forty to fifty feet off the ground. In so doing, he utilized a safety harness and wore a hard hat. Nearing the end of the day, Smith removed his harness to use the restroom. On his walk to the restroom, Smith's

---

intentional failure of the employee to use any safety appliance furnished by the employer or to obey any lawful and reasonable order or administrative regulation of the commissioner or the employer for the safety of employees or the public, the compensation for which the employer would otherwise have been liable under this chapter shall be decreased fifteen percent (15%) in the amount of each payment.

2

supervisor announced that when the last form was completed, the employees would be allowed to go home for the day.

Instead of going to the restroom, Smith returned to the area he was working to complete the task. He did not put his safety harness back on, testifying that he did not think about it. His co-worker hit the form with a metal bar to loosen it from the wall, and this action caused the form to knock Smith off the bridge. Smith fell approximately 50 feet onto boulder-sized shot rock. Smith sustained a broken pelvis, fractured skull, crushed wrists, broken ribs, and lacerated spleen and later developed a bowel obstruction.

Smith testified that he always wore his harness, but that on this occasion, he was in a hurry and had just taken the harness off. The ALJ issued an Opinion, Order and Award that awarded Smith permanent partial disability (PPD) benefits based on his 17% impairment rating. The ALJ also found that the 15% safety violation penalty, pursuant to KRS 342.165, was not applicable. Specifically, the ALJ found "there is no evidence that [Smith] consciously disregarded or willfully ignored using his safety harness," and "[t]he accident occurred not as a result of any willful misconduct of [Smith] but due to a simple act of negligence."

Judy Construction filed a petition for reconsideration disputing the ALJ's denial of the safety penalty violation, which the ALJ overruled. Subsequently, the Workers' Compensation Board and Court of Appeals both affirmed. This appeal followed.

3

## II. STANDARD OF REVIEW

Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact. "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is de novo." *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

As to questions of fact, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). Furthermore,

> KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

*Abel Verdon Const. v. Rivera*, 348 S.W.3d 749, 753-54 (Ky. 2011) (footnotes omitted).

"Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's

conclusion." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367 (Ky. 1971).

## III. ANALYSIS

Judy Construction points out that KRS 342.165(1) holds both employers and employees to the standard of an "intentional failure." It argues that the ALJ's conclusion of the standard of law, and her application of the facts to the law were erroneous. Furthermore, Judy Construction argues that the ALJ's conclusion that the injuries were due to a simple act of negligence is misplaced. Judy Construction asserts that "the law requires proof that the party knew of the safety provision, that the provision was violated, and that the injury be caused in any degree by that violation." Judy Construction states that upholding the lower court's decision would set a dangerous public policy "that an employee should not be held liable for their failure to heed a safety regulation because the employee did not intend to harm himself."

As discussed in more depth below, we do not find Judy Construction's argument regarding intent persuasive. KRS 342.165(1) is clear: "If an accident is caused in any degree by the intentional failure of the employee to use any safety appliance furnished by the employer . . . ," the amount to which the employee is entitled is reduced by 15%. The intent required by the statute goes to the employee's "failure to use a safety appliance." *Id.*

When reviewing KRS 342.165(1), its application requires proof of two elements. *Apex Mining v. Blankenship*, 918 S.W.2d 225 (Ky. 1996). First, the record must contain evidence of the existence of a violation of a specific safety provision, whether state or federal, or, as in the instant claim, a specific safety policy or order of an employer. *Id.* Secondly, evidence of "intent" to violate the specific safety provision must also be present. *Id.*

Judy Construction would have this Court rely on *Homback v. Hardin Memorial Hosp.*, 411 S.W.3d 220, 227 (Ky. 2013), for the proposition that "intent is inferred when a safety rule is ignored or when a party fails to comply with a safety policy." However, that language is not contained in *Homback*. In that case, an employee was stuck in an elevator between floors at work. Her employer attempted to rescue her from the elevator without contacting appropriate rescue personnel, leading to her permanent disability when she fell down an open elevator shaft. In determining whether the KRS 342.165(1) penalty applied to increase the injured worker's benefits, this Court held "the ALJ's conclusion that the [elevator manual] was the adopted safety policy of [the employer] is not supported by substantial evidence." *Id.* at 224. In the absence of the violation of a particular safety rule or regulation, we looked in that case to whether the hospital "violated the 'general duties' provision of Kentucky's Occupational Safety and Health Act, KRS 338.031." Much of our opinion addressed whether the employer's conduct amounted to such a violation of KOSHA. Finally, we made it clear that "an employer's intentional violation must be proven before the enhancement provided in KRS 342.165(1)

6

can be applied." We agreed that the ALJ did make such a finding and that there was "sufficient evidence that [the employer] intentionally disregarded the safety hazard that can occur if an elevator stalls by failing to take appropriate preventative measures to prevent or reduce the risk of injury." *Id.* at 227. Therefore, relying upon the findings of fact of the ALJ based upon substantial evidence, we held the safety penalty was properly applied.

Appellant also extensively cites *AIG/AIU Ins. Co. v. South Akers Mining Co., LLC*, 192 S.W.3d 687 (Ky. 2006), as a case clarifying the logic the Workers' Compensation Board relied on in *Terry v. AFG Industries*, WCB Opinion No. 00-94292 (Jan. 2, 2003)—a case cited and discussed below. However, *AIG* was a case between a workers' compensation insurance carrier and an employer—not between an employer and employee. It did not concern the intent element of KRS 342.165(1), but rather, whether an intentional violation was covered under the insurance policy at issue in that case. We do not find *AIG* instructive herein.

Judy Construction also points us to *Chaney v. Dags Branch Coal Co.*, 244 S.W.3d 95 (Ky. 2008). In that case, a coal miner was killed when a section of roof collapsed. The issue in that case was whether the employer's failure to follow safety regulations was intentional in order to trigger the 30% safety penalty. There, the requisite warning markers had not been placed near the unsupported sections of roof so that workers could easily ascertain the unsafe, restricted areas. The ALJ found that the claimants (the family of the deceased worker) had failed to show the requisite intent. *Id.* at 96. The Workers'

Compensation Board and Court of Appeals both affirmed the ALJ. This Court reversed, holding:

> An employer is presumed to know what specific state and federal statutes and regulations concerning workplace safety require; thus, its intent is inferred from the failure to comply. If the violation "in any degree" causes a work-related accident, KRS 342.165(1) applies. The employer failed to place warning devices on the last row of permanent roof supports in violation of 30 C.F.R. § 75.208, and the evidence compelled a finding that the violation to some degree caused the fatal accident.

*Id.* at 96-97. We went on to state that "[a]bsent unusual circumstances . . . , an employer is presumed to know what specific state and federal statutes and regulations concerning workplace safety require. Thus, its intent is inferred from the failure to comply with a specific statute of regulation." *Id.* at 101.

Judy Construction would have us apply this standard of inferred intent to employees like Smith in the case at hand—arguing this Court's "modern cases have evolved the standard by which both an employer and employee's intent and actions are reviewed." It urges us to find liability "based on the act itself if it is determined that a party was aware of the safety provision subsequently violated." We decline to make any and every violation of a safety provision an automatic and absolute determination of intentional violation without allowing the ALJ to consider the circumstances of the case in determining whether the violation might have been a momentary inadvertent lapse.

Furthermore, to imply that *Chaney* signaled a sea-change in this Court's jurisprudence concerning KRS 342.165(1) is simply inaccurate. In fact, just one month after this Court rendered its opinion in *Chaney*, it rendered another

8

case involving the safety penalty, *Burnwell Energy Co. v. Smith*, 2007-SC-000114-WC, 2008 WL 466129 (Ky. Feb. 21, 2008). In that case, a miner suffered an injury to his eye when a piece of metal struck him. The employee testified that he knew of the employer's policy requiring employees to wear safety goggles at all times. However, in spite of this knowledge and the fact that the employee admitted that he had temporarily removed his safety goggles as they had fogged up and he needed to wipe the sweat from his face, this Court did not use its reasoning from the *Chaney* opinion to create an inference that the employee's removal of his goggles amounted to an intentional failure to follow his employer's safety regulations. Less than thirty days after deciding *Chaney,* this Court looked to whether the ALJ based its finding that the employee did not consciously disregard the employer's policy upon substantial evidence. We held that such evidence existed and affirmed on those grounds. *Burnwell,* 2008 WL 466129 at *2. We did not look to whether the employee knew of the policy and then infer his intent based upon that knowledge coupled with his action as Judy Construction now asks us to do.

The facts of *Burnwell* are strikingly similar to the case at bar. In both cases, the employees knew of their employers' regulations requiring them to wear safety equipment. Both employees testified that they typically wore the safety equipment—and had both been wearing the equipment prior to removing it before incurring their injuries. The ALJs in both cases were in the best position to determine the employees' credibility; in each case, the ALJ found

9

the employee's testimony to be credible and that his actions did not amount to an intentional failure to comply with safety regulations.

Just as in *Burnwell*, we will not disturb the ALJ's finding herein absent a lack of substantial evidence. The ALJ was in the best position to determine the weight and credibility of the evidence. In both cases, the employees had been complying with their employers' safety regulations just moments before their injuries. This is easily distinguishable from *Chaney*, 244 S.W.3d at 96-97, in which we inferred the employer's intent from its failure to comply with federal safety regulations. In *Chaney*, the employer failed to follow the regulation to mark the appropriate row so that employees would know they were entering an unsafe, restricted area. Here and in *Burnwell*, the employees testified they had complied with their employers' safety rules until just before their injuries. The ALJ is in the best position to weigh the evidence and credibility of witnesses to determine whether the employee's action or inaction amounts to an "intentional failure" to follow the safety rules or regulations.

In the case at hand, Smith testified that he always wore his safety harness. The ALJ's order reads:

> The purpose of KRS 342.165 is to reduce the frequency of industrial accidents by penalizing those who intentionally fail to comply with known safety regulations. The application of the safety penalty requires proof of two elements. First, the record must contain evidence of the existence of a violation of a specific safety provision, whether state or federal. Second, there must be evidence of "intent" to violate a specific safety provision.
>
> "Intentional failure" must be more than simple negligence. Penalties pursuant to KRS 342.165(1) are punitive in nature, and require a level of conduct by a party equivalent to malfeasance,

10

rather than misfeasance or nonfeasance. *Terry v. AFG Industries,* WCB Opinion No. 00-94292 (January 2, 2003). The party must have an immediate cognizance that the conduct causing the injury is in contravention to the policy or regulation. *Barmet of Kentucky v. Sallee,* 605 S.W.2d 29 (Ky. App. 1980).

In this case, there is no evidence that [Smith] consciously disregarded or willfully ignored using his safety harness. [Smith] had worn his harness all day and was wearing his hard hat. On this occasion, after taking his harness off to go to the bathroom near the end of the day, he simply without thinking went to help get the last form down after his supervisor said once that was done they would get ready to head home. In that moment while trying to hurry to go home, [Smith] inadvertently forgot to put back on his harness. The accident occurred not as result of any willful misconduct of [Smith] but due to a simple act of negligence. Based on the forgoing [sic] law and facts, the 15% penalty is not applicable.

It is Judy Construction's position that the ALJ misinterpreted *Terry,* WCB Opinion No. 00-94292, and that case precedent sets a strict standard for application of the safety penalty in KRS 342.165 and that we should, therefore, review the ALJ's application of the law de novo. We are not persuaded by this argument.

In *Terry,* the Workers' Compensation Board found:

Inadvertent negligence by the employee is not enough. There must be a level of awareness by the party not merely with regard to the existence of a safety regulation or policy, but an immediate cognizance that the conduct causing the injury is in contravention to the policy or regulation. *Barmet of Kentucky v. Sallee,* [605 S.W.2d 29 (Ky. App. 1980)]. In other words, the injury must be the result of conscious wrongdoing. The act causing the injury must be desired by the doer, and the consequences reasonably foreseeable. The violation must be advertent and rise to the level of at least reckless disregard or willful misconduct. *See, Larson's Workers' Compensation,* §31. Only then, if the accident caused by the employee is attributable "in any degree" to his failure to use any safety appliance furnished by his employer, or his failure to obey any lawful and reasonable order or administrative regulation

11

of the Commissioner or his employer for the safety of employees or the public, shall the compensation for which his employer is liable be decreased by 15% in the amount of each payment.

WCB Opinion No. 00-94292.

The ALJ found there to be no evidence that Smith consciously disregarded or willfully ignored using his safety harness. Smith testified that he always wears his safety harness. He said at the time the accident occurred, he was in a hurry and did not think to put the harness back on. Aligned with our case precedent, this finding provides substantial evidence to support the ALJ's conclusion. *Whittaker*, 998 S.W.2d at 481.

We will not disturb this finding of fact when there is substantial evidence on which the ALJ based the decision.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

Minton, C.J.; Hughes, Keller, Lambert and Wright, JJ., concur.

VanMeter, J., concurs in result only without separate opinion. Nickell, J. not sitting.

COUNSEL FOR APPELLANT:

Carolyn Ann Allen
Pohl & Aubrey PSC

Ronald Jude Pohl
Pohl & Aubrey PSC

Paul Gregory Richmond
Pohl & Aubrey PSC


COUNSEL FOR APPELLEE SHAWN SMITH:

James Richard Martin II
Lexington, KY

COUNSEL FOR ADMINISTRATIVE LAW JUDGE:

Monica Rice-Smith
Frankfort, KY


COUNSEL FOR APPELLEE WORKERS' COMPENSATION BOARD:

Michael W. Alvey
Administrative Law Judge